1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**KNEUPPER & COVEY, PC**
Kevin Kneupper, Esq. (CA SBN 325413)
17011 Beach Blvd., Ste. 900
Huntington Beach, CA 92647
Kevin@kneuppercovey.com
Tel: (512) 420-8407

*Attorneys for Plaintiff*
*Socorro Lopo*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

SOCORRO LOPO,

               Plaintiff,

v.

CHRISTOPHER MASANTO,
ANDREW MASANTO, ALTITUDE
ADS LIMITED, AMPLIFY LTD.,
COFOUNDANT LTD and
COFOUNDANT HOLDINGS LTD,

               Defendants.

Case No. 2:21-cv-01937

**COMPLAINT FOR:**

(1) Violation of Magnuson-Moss Warranty Act;
(2) Breach of Express Warranty to a Contract;
(3) Breach of Implied Warranty of Merchantability in a Contract;
(4) Violation of the Consumer Legal Remedies Act;
(5) Violation of the California False Advertising Law;
(6) Violation of the Unfair and Fraudulent Prongs of the California Unfair Competition Law;
(7) Violation of the Unlawful Prong of the California Unfair Competition Law;
(8) Common Law Fraudulent Concealment;
(9) Negligent Misrepresentation;
(10) Negligent Manufacturing, Design, and Failure to Warn; and
(11) Strict Products Liability for Manufacturing Defect, Design Defect, and Warning Defect.

**<u>DEMAND FOR JURY TRIAL</u>**

Plaintiff SOCORRO LOPO, by and through their undersigned counsel, hereby files this Complaint against Defendants, CHRISTOPHER MASANTO, ANDREW MASANTO, ALTITUDE ADS LIMITED ("Altitude Ads"), AMPLIFY LTD. ("Amplify"), COFOUNDANT LTD ("Cofoundant") and COFOUNDANT HOLDINGS LTD ("Cofoundant Holdings"), collectively the "Cel MD Defendants," and allege as follows:

**JURISDICTION AND VENUE**

1.     This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1332 because the amount in controversy is in excess of $75,000, exclusive of interest and costs, and the dispute is between citizens of different States and in which citizens or subjects of a foreign state are additional parties.

2.     This Court has subject matter jurisdiction over this matter because Plaintiff's Magnusson-Moss Warranty Act ("Magnusson-Moss") claim, 15 U.S.C. §§ 2301, *et. seq.,* arises under federal law. The amount in controversy of Plaintiff's individual claims meet or exceed $25, and the amount in controversy for all claims to be determined by this lawsuit meets or exceeds $50,000. 15 U.S.C. § 2310(d)(1).

3.     This Court has supplemental jurisdiction over the state law claims in this action pursuant to 28 U.S.C. § 1367.

4.     This Court has personal jurisdiction over Defendants because Defendants are authorized to conduct and do business in California, including this District. Defendants marketed, promoted, distributed, and sold their products in California, and Defendants have sufficient minimum contacts with this State and/or sufficiently availed themselves of the markets in this State through their promotion, sales, distribution, and marketing within this State, including this District, to render the exercise of jurisdiction by this Court permissible.

5.     The Defendants purposely directed their activities towards California.

6.     Defendants committed intentional acts by running websites from at least 2018 through the present accessible to California residents with knowledge that California residents would purchase and were purchasing from those sites; by targeting California

residents with advertisements; by registering to do business in California; and by shipping products to California residents.

7.     These intentional acts were expressly aimed at California residents. The Defendants targeted their conduct at California residents, including the Plaintiff, and knew they were California residents by virtue of their shipping addresses and other contact information. These acts involved ongoing, systemic, and continuous contact with California because the shipment of Cel MD Products occurred from at least late 2017 through the present, more than three years. Those shipments often occurred as part of subscriptions, meaning that the Defendants shipped continually and regularly to their California customers over long periods of time. The acts were entirely commercial in nature, as the Defendants profited from selling the Cel MD Products.

8.     The Defendants generated substantial profits from their acts aimed at California residents. They placed the Cel MD Products into the stream of commerce, knowing and intending that they would be advertised over the Internet to California residents and purchased by California consumers.

9.     The Defendants knew or should have foreseen that their actions would cause harm in California. As described herein, they intentionally ran advertising claiming to have an advanced plant stem cell formula over a lengthy period of time. They knew that California consumers were being harmed. Had they not done so, the California consumers would not have been harmed because the Cel MD Products would not have been shipped to them and the consumers would not have seen the false representations described herein.

10.     On information and belief, Defendant Andrew Masanto was aware that Cel MD products were being advertised and sold in California on an ongoing basis, and took specific actions to encourage these sales and activities in his role as co-founder and head of the New York branch of Altitude Ads, through at a minimum advice, general assistance, and financial assistance. Defendant Christopher Masanto likewise was aware of this, and specifically directed these advertisements and sales in his role as CEO of Altitude Ads and personally registered Amplify Limited to do business in California.

11.     Because of these facts, personal jurisdiction is appropriate in California over the Defendants.

12.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a) and (b) because a substantial part of the events giving rise to Plaintiffs' claims occurred while she resided in this judicial district, and because the Defendants have registered to do business in California. Venue is further proper as to Defendants Christopher Masanto, Altitude Ads, and the Cofoundant defendants under 28 U.S.C. § 1391(c)(3) because they do not reside in the United States.

## NATURE OF THE ACTION

13.     Cel MD is a line of hair loss and skin care products which—if the Cel MD Defendants are to be believed—is nothing short of miraculous. The products purport to use plant stem cells to cure hair loss and skin problems. These products are sold directly to consumers via the Cel MD website (cel.md) and have been since at least April 2018 through the present.

14.     The Cel MD Defendants claim to their customers that they have created a "patented and expertly refined plant stem cell formula."[1] This has resulted in the creation by Cel MD of various miracle "plant stem cell" products designed to either improve skin or that are "scientifically proven to effectively combat hair thinning and loss."[2]

15.     Cel MD represents that its shampoo and conditioner was created by various scientific experts in the US and Korea.[3]

16.     Cel MD claims of its skin care products: "Our powerful, patented healing formula is scientifically proven to promote healthy looking skin."[4] The Cel MD Defendants claim to "use plant stem cells to help renew your skin cells, brighten and tighten your complexion and soothe dry, irritated skin."[5]

---

[1] Cel.Md, https://www.cel.md/pages/cel-science (last visited June 17, 2019).
[2] Cel.Md, https://www.cel.md/products/cel-shampoo-conditioner (last visited June 17, 2019).
[3] Id.
[4] Cel.Md, https://www.cel.md/products/cel-mask (last visited July 9, 2019).
[5] Id.

17.     But Cel MD is no miracle. These products are nothing more than modern snake oil, promising results that are impossible to deliver given the nature of their ingredients. Much of the marketing of these products amounts to science fiction. All of Cel MD's customers are told that "plant stem cells" will help cure their hair and skin products—an avenue of research that some believe may come true in a few decades. But none of their customers are told the truth—that while Cel MD may use "plant stem cells" in their products, those cells have been turned into extract: they are not living and have been processed in ways that kill off the cells, making it impossible for the cells to function in the way some scientists theorize a living plant stem cell could.

18.     The "MD" in the name Cel MD implies to the ordinary person that the Cel MD Defendants are either doctors or a medical practice. In fact, the State of California has made it unlawful to use these initials without being a licensed medical doctor because the legislature determined that using the initials would falsely suggest otherwise. But in the name Cel MD, the "MD" actually stands for Moldova—the country from which the Cel MD Defendants purchased their domain name, and a country to which these Defendants have no other connections whatsoever. The Cel MD Defendants are not a medical practice. They are an advertising agency that launched its own proprietary products. Yet online, they pose as doctors, frequently giving medical advice to cancer patients and individuals who have suffered hair loss from serious medical procedures such as chemotherapy or brain surgery. And that medical advice is invariably to try Cel MD's products.

19.     The Cel MD Defendants have engaged in pervasive dishonesty throughout their advertising materials. They have photoshopped their products onto pictures of beauty bloggers and models, falsely claiming that those bloggers and models endorsed them. They have used photos of their own employees or stock photos from the Internet as "customer photos." They have told science fiction tales of operating a human stem cell cloning facility, of having developed "super skin," "super bacteria," and "super biotin." They claimed their products have FDA approvals, when in fact they do not. They utilize fake timers on their website which purport to limit the availability of discounts, when in fact

those timers do nothing whatsoever. They tell customers that there is a limited supply of their products so that there is great urgency in purchasing them before they run out—and they have been telling them this same tale of imminent future shortages for over a year.

20.   The Cel MD Defendants have long been aware that ingredients in their products cause allergic reactions in some customers. There have been numerous reports of scalp burns, of rashes, of hair falling out, and other serious side effects. Yet the Cel MD Defendants did nothing to address it and issued no warnings to their customers. Instead, they actively targeted customers with hair loss from serious medical issues such as brain surgery or cancer. Posing as a medical practice under the name "Cel MD," these advertising agents urged the seriously ill to try their products as a potential remedy. With no medical expertise, no knowledge of how their products would interact with these customers' ongoing treatments, and knowing only that their products could cause severe allergic reactions, the Cel MD Defendants recommended them anyway.

## THE PARTIES

21.   **Plaintiff Socorro Lopo** is a citizen of California residing in Glendora, CA. In October 2018 she purchased Cel MD's Brow and Lash Boosting Serum, Microstem Shampoo, and Microstem Conditioner through the Cel MD website. In March 2019, Plaintiff Lopo purchased Cel MD's Microstem Hair Stimulation Formula and Cel MD's Hair Stimulation Pack through the Cel MD website. Plaintiff Lopo paid $234.69 for the Cel MD products.

22.   Plaintiff Lopo purchased the Cel MD products in reliance on the Defendants' representations in their Facebook advertisements and on their website that these products would improve her hair quality and growth and her eyelash quality and growth.

23.   The Cel MD products did not produce the miraculous results attested to on the Cel MD website and in the Facebook ads, did not perform as warranted, or even produce any positive results whatsoever. Instead, Plaintiff Lopo soon found the skin on her scalp and face becoming dried out, and itchy. She ultimately discontinued her use of the failed products.

24.     **Defendant Christopher Masanto** is a citizen of Australia residing in London, United Kingdom, with a registered address of: 32 Prescott Street, London, E1 8AX, United Kingdom. Christopher Masanto is the CEO and Director of Altitude Ads Limited, and the CEO and Secretary of Amplify Limited. According to Christopher Masanto's LinkedIn profile, in his position at Altitude Ads he "leads a talented team of internet marketers who specialise in advertising products and services online at scale."[6] One of those is the Cel MD line of products, which Christopher Masanto states on his LinkedIn profile was created by himself and Altitude Ads in April 2018. Defendant Christopher Masanto signed the documents filed with the California Secretary of State on behalf of Amplify Limited to do business in California.

25.     **Defendant Andrew Masanto** is a citizen of Australia residing in New York, NY, with a registered address of: 146 W. 57th Street, #36D, NY, NY 10019. Andrew Masanto describes himself in his biography as "a serial entrepreneur, having founded Altitude Shoes (sold in 2012), Higher Click SEO Agency (sold in 2013), Altitude Ads (ongoing) and then Co-Founding Hadera Hashgraph in 2017."[7]

26.     In 2014-2015, Andrew Masanto created a skin care company called Royal Dermatological Foundations, incorporated as RDF LLC ("RDF"). The RDF website lists two products in development—an "aging serum" designed to be applied to the skin, and an "advanced eye repair cream." Cel MD has created similar products, the Nanotech Stem Cell Face Mask and its Eye Serum.

27.     By 2018 Andrew Masanto was clearly involved in Cel MD. He describes himself in his biography as having "founded" Altitude Ads, the parent company and creator of Cel MD.[8] He has conducted hiring on behalf of Altitude Ads and had access to the Altitude Ads LinkedIn account, posting an advertisement on LinkedIn for a personal

---

[6] LinkedIn, https://uk.linkedin.com/in/christopher-masanto-56088a4a (last visited June 18, 2019).
[7] Reserve, https://reserve.org/our-team (last visited June 22, 2019).
[8] Reserve, https://reserve.org/our-team (last visited June 22, 2019).

assistant to work for Altitude Ads in New York City.[9] In the advertisement, Andrew Masanto describes himself as one of "[t]he Founders of the successful advertising companies Jump 450 and Altitude Ads (NYC branch)...."[10] The advertisement was posted in roughly June-July 2018, which coincides with the launch of Cel MD in April 2018 and its subsequent ramp-up. Cel MD is the primary product line of Altitude Ads. On information and belief, Andrew Masanto operates the New York branch of Altitude Ads through the Delaware corporation Amplify Limited.

28.     On information and belief, based Andrew Masanto was involved creating and developing Cel MD and its marketing materials. This is supported by his background and experience, his interest and work in founding a nearly-identical skin care company just a few years before Cel MD, the timing of his hiring activities on behalf of Altitude Ads, the corporate structure of the companies which are based in New York (where Andrew Masanto lives) and London (where Christopher Masanto lives), and his publicly acknowledged role as co-founder of Altitude Ads and his role in operating the New York branch of Altitude Ads, whose only apparent activities in that time frame involve Cel MD. On information and belief, Andrew and Christopher Masanto are brothers, and they cooperated together in creating and promoting Cel MD after Andrew Masanto's RDF skin care venture failed.

29.     **Defendant Altitude Ads Limited ("Altitude Ads")** is a United Kingdom corporation with a registered address of: 31-33 Prescot Street, London E1 8BB, United Kingdom. Defendant Christopher Masanto is listed as the owner, operator, or beneficiary in interest of Altitude Ads in its corporate documents. Altitude Ads lists Cel MD on its website under the banner "Our Brands" along with photos of the products and a link to the Cel MD website.[11] Christopher Masanto states that "Altitude Ads has created … Cel

---

[9] LinkedIn, https://www.linkedin.com/jobs/view/personal-assistant-at-altitude-ads-744634627/ (last visited June 22, 2019).
[10] *Id.*
[11] Altitude Ads, https://www.altitudeads.com/ (last visited June 19, 2019).

MD...."[12] The Cel MD website states that "Amplify is solely owned by Altitude Ads Ltd."[13]

30.  **Defendant Amplify Limited** is a Delaware corporation with a registered address of: 413 West 14th Street, 2nd Floor, New York, NY 10014. Amplify Limited is registered to do business in California under the name "Amplify Products," with an address of 1375 Broadway, 15th Floor, New York, NY. Defendant Christopher Masanto is the Chief Executive Officer and Secretary of Amplify Limited, as reflected in its corporate filings as a foreign corporation doing business in California and Florida. In its Florida filings, Amplify Limited refers to itself as "Amplify Limited Inc.," and is registered to do business in Florida as "Amplify Media Inc." The Cel MD website states that it "is operated by Amplify LTD."[14] The product packaging for the Cel MD products likewise lists their company name as "Amplify LTD."

31.  **Cofoundant LTD** and **Cofoundant Holdings Limited** are United Kingdom corporations with a registered address of: 31-33 Prescot Street, London, United Kingdom, E1 8BB. Respondent Christopher Masanto is listed as the owner, operator, or beneficiary in interest of Cofoundant LTD and Cofoundant Holdings Limited in their corporate documents. The ownership of and assets relating to Cel MD were transferred into these companies as part of a sham transaction intended to avoid liability in this and other litigation. These companies are liable for the conduct of their predecessors-in-interest.

32.  Together Defendants Christopher Masanto, Andrew Masanto, Altitude Ads Limited, Blooming Investments Limited, and Amplify Limited ("the Cel MD Defendants") created, own, operate, and control the Cel MD brand, website, and business operations. Together they manufacture, advertise, market, distribute, and/or sell the Cel MD products to thousands of consumers in California and throughout the United States, and have done so from roughly September 27, 2017 (when they launched their Facebook page as "Stem Cell MD") through the present.

---

[12] LinkedIn, https://uk.linkedin.com/in/christopher-masanto-56088a4a (last visited June 18, 2019).
[13] Cel MD Website, https://www.cel.md/pages/terms-conditions (last visited July 9, 2019).
[14] Cel.Md, https://www.cel.md/pages/terms-conditions (last visited June 19, 2019).

**The Cel MD Joint Venture**

33.     The Cel MD Defendants formed a joint venture, and each of the members of that joint venture, as well as the joint venture itself, are jointly and severally liable for the wrongful conduct of any members acting in furtherance of the venture.

34.     Defendants Christopher Masanto, Andrew Masanto, Altitude Ads Limited, the Cofoundant Defendants, and Amplify Limited combined their property, skill, and knowledge with the intent to carry out a single business undertaking. That business undertaking was the Cel MD brand and website, led by Christopher Masanto (who ultimately owns and controls the three other corporate entities) and Andrew Masanto (who on information and belief directs the United States operations of the joint venture).

35.     Each of the Cel MD Defendants has an ownership interest in the joint venture. Christopher Masanto is the ultimate owner of the group of companies according to their corporate filings in the UK. On information and belief, in his role as "co-founder" Andrew Masanto is entitled to an ownership interest. Such agreement is further implied by the members' conduct in creating and controlling the Cel MD brand and website, as well as by the statements on the Cel MD Defendants' websites and LinkedIn pages.

36.     On information and belief, the Cel MD Defendants have joint control over the business, or agreed to delegate that control. Such control is implied by the member's conduct because Christopher Masanto is ultimately the owner and the CEO of Altitude Ads, Amplify Limited, and the Cofoundant Defendants, and by Andrew Masanto's exercise of the power to hire employees on behalf of Altitude Ads and his control over the Altitude Ads LinkedIn account.

37.     The Cel MD Defendants have an agreement to share the profits and losses of the joint venture. Such agreement is implied by the members conduct because of the overlapping corporate ownership and decision-making structure, as well as the various statements on their websites and LinkedIn pages.

# FACTUAL ALLEGATIONS

## Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name

38.     The Cel MD Defendants use the brand name "Cel MD" as an overall brand for marketing their products. All of the products are sold on the Cel.md website or using the Cel MD name on Amazon.com. The Cel MD Defendants' Facebook advertisements were all labeled as from "Cel MD" until roughly July-August 2019, and the title of their Facebook page was Cel MD. At some point this was changed, but the Facebook URL remains "celmdbeauty" and the product is still described as Cel MD on the page. Since that time, the Cel MD Defendants have maintained Facebook advertising accounts with titles such as "Cel MD Offers" or "Cel MD Results," and are presently advertising under those names. The Cel MD Defendants' Instagram page is titled "celmd.beauty" and this is featured prominently as the name at the top of the page.[15] The Cel MD Defendants' Youtube page is titled "Contact Stem Cell MD Tech," and the names for the vast majority of the advertising videos they have uploaded (which are embedded into their website and viewable there) begin their titles with the words "Cel MD."[16] On information and belief and given the structure of their websites and sales funnels, every customer of the Cel MD products would have been exposed to and viewed the "Cel MD" brand name.

39.     The "MD" portion of this brand name is deceptive or misleading to consumers because it falsely implies to consumers that medical doctors, or "M.D.'s," are selling the Cel MD products. "MD" is commonly known as an abbreviation used by doctors to signify their educational training and achievement, or as part of the name of a medical practice.

40.     In the context of Cel MD's website, however, MD is an abbreviation for the country of Moldova. On information and belief, the Cel MD Defendants have no connection to the country of Moldova.

---

[15] Cel MD Instagram, https://www.instagram.com/celmd.beauty/?hl=en, (last visited June 23, 2019).
[16] Cel MD Youtube Page, https://www.youtube.com/channel/UCrQoAp3iHHr-ZEAXG50d0Aw/videos, (last visited June 23, 2019).

41.     The Cel MD Defendants have repeatedly used the "MD" portion of their name to suggest to consumers that they are medical doctors.

42.     On information and belief, the Cel MD Defendants chose the "MD" abbreviation to deliberately suggest to consumers that their products were sold by a medical practice.

43.     The Cel MD Defendants further deceived their customers by omission by failing to disclose the information that "MD" in the URL stands for Moldova and not "Medical Doctor(s)" and for failing to disclose that they are not doctors nor are they a medical practice.

44.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that "MD" stands for Moldova and not "medical doctor(s)" as reasonable consumers would assume.

45.     Plaintiff did not know this, and the information was difficult to discover because it requires expertise in domain names and their operation as well as an investigation into the qualifications of the actual people who are behind Cel MD, who are not disclosed by name on the Cel MD website and who cannot be easily located without searching corporate records (and in some instances cannot be located at all from public information).

46.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted negative comments on their Facebook ads, as evidenced by the disparity between comments listed on the ads and comments appearing on the ads. For example, on one ad, there have been 16 comments, but only 9 of those comments are publicly visible.[17]

---

[17] Cel MD Facebook Page, https://www.facebook.com/watch/?v=558708074666940 (last visited June 21, 2019).

47.     On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

48.     The Cel MD Defendants were further under a duty to Plaintiff because they made partial representations—using the term "MD" and describing themselves on their website as "innovators" who are "pioneering scientific methods" when in fact they are an advertising company—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that they are not medical doctors, are not a medical practice, that MD in the URL stands for Moldova, and that they have no connection to Moldova.

49.     The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by using a different URL to host the Cel MD website and removing "MD" entirely from its name on Amazon, Facebook, on the Cel MD website, and in any other places it is used.

50.     This use of "MD" in the Cel MD name is a violation of the California laws against unauthorized practice of medicine. The Cel MD Defendants are not physicians licensed by California or any other state as medical doctors. Pursuant to Cal. Bus. & Professions Code § 2054, "[a]ny person who uses in any sign, business card, or letterhead, or in an advertisement... the initials 'M.D.,' or any other terms or letters indicating or implying that he or she is a physician and surgeon, physician, surgeon, or practitioner under the terms of this or any other law... is guilty of a misdemeanor." The Cel MD Defendants' conduct is thus unlawful under the California Unfair Competition Law.

51.     The Cel MD Defendants' misrepresentations and omissions regarding their brand name were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations and omissions in deciding whether to

purchase the Cel MD products because had they known that Cel MD was not a medical practice and was not run by doctors, and that in fact the "innovators" were an advertising agency staffed primarily by digital marketing specialists with no medical degrees, consumers would not have purchased the Cel MD products or would not have paid as much for those products. Plaintiff thus reasonably relied upon these representations in making their purchase decisions.

### Omissions Regarding Reviews and Endorsements

52.     Customer reviews, testimonials, videos, and photographs that purport to come from happy customers pervade the Cel MD Defendants' marketing materials. In their Facebook advertisements, in their Youtube pages, on the Cel.md website, and on the Amazon website, these endorsements are present. On information and belief, and based on the structure of the Cel.md sales funnels and websites, Plaintiff, and every other customer who purchased a product from Cel.md would have been exposed to and view at least one of these endorsements at least through roughly October 2019.

53.     The Cel MD Defendants' website utilizes customer reviews throughout the site often associated with photographs of what purport to be real customers who have given gushing reviews of the Cel MD products. But many of the photos are not in fact real customers. Instead, they are stock photos of models who have no connection whatsoever with the Cel MD Defendants or their products. On information and belief, many of the "customer photos" on the Cel MD website are either of Altitude Ads employees or friends of those employees who are not actual customers. Nowhere is it disclosed that these photos are of employees or others who have been compensated.

54.     Multiple other "customer photos" have been reused on the Cel MD website with different customer names and different reviews.

55.     Many of the other images presented on the Cel MD website as being customers or reviewers who made a "Verified purchase" also appear on hundreds of other third-party websites with no connection to Cel MD. On information and belief, the Cel MD Defendants or their agents purchased these stock photos or obtained them from third party

websites, falsely labeled them as actual customers, and wrote many of the "reviews" on their website themselves.

56.     The appearance associated with the reviewers is material to Cel MD's customers and their decision to purchase Cel MD products. Because these fake photos are of individuals with the kind of healthy, vibrant hair and perfect skin that Cel MD is selling to its customers as the primary benefits of its products, portraying reviews as coming from these individuals misleads Cel MD customers as to the kinds of results they may expect from using the products.

57.     Cel MD also utilizes a website called "TrustPilot" to display reviews on its own website, and it frequently touts its high scores in advertisements. TrustPilot acknowledged that there is a widespread "black market" for fake reviews on its website.[18]

58.     As of June 2019, the reviews for Cel MD on TrustPilot were almost universally positive, with 95% of reviewers giving Cel MD a 5-star rating:[19]

59.     By contrast, on Amazon in the same time period, Cel MD's shampoo and conditioner products managed a mediocre 3.7 rating, with a full 20% of reviewers giving the products the lowest possible 1 star rating:[20]

60.     From March 26, 2019 through October 13, 2019, Cel MD continued to have this same disparity in TrustPilot reviews, racking up almost 200 five-star reviews with zero negative reviews. But on October 14, 2019—after the Cel MD Defendants learned that that they were being investigated for a class action lawsuit—this suddenly changed. A flood of one-star, two-star, and three-star reviews for Cel MD were released onto the TrustPilot website, all dated after October 14, 2019. Cel MD went from a 4.9 rating to a 4.3 rating, with its one-star ratings jumping from zero to ten percent.[21]

---

[18] Mike Deri Smith, "Fake Reviews Plague Consumer Websites," *The Guardian* (online, Jan. 26, 2013), https://www.theguardian.com/money/2013/jan/26/fake-reviews-plague-consumer-websites (last visited June 18, 2019).
[19] TrustPilot, https://uk.trustpilot.com/review/cel.md?page=3 (last visited June 18, 2019).
[20] Amazon.com, https://www.amazon.com/CEL-MD-Thickening-Conditioner-Stimulating/dp/B07D7HRVDL (last visited June 18, 2019).
[21] TrustPilot, https://www.trustpilot.com/review/cel.md (last visited Nov. 18, 2019).

61.   On information and belief, this vast disparity is because of manipulation or falsification of the TrustPilot reviews by Cel MD. Because the TrustPilot reviews automatically populate Cel MD's website, this manipulation makes it appear to visitors of the Cel MD website that Cel MD receives almost universally positive reviews—when in fact, the reviews on Amazon complain of problems ranging from ineffectiveness of the products to scalp burns or hair loss caused by the Cel MD products.

62.   On information and belief, some of Cel MD's positive Amazon reviews are fake or were obtained through undisclosed compensation.

63.   On information and belief, some of Cel MD's positive reviews or comments on its Facebook ads are fake or were obtained through undisclosed compensation. The Cel MD Defendants have also hidden or deleted negative comments on their Facebook ads, as described further herein. On information and belief, the Cel MD Defendants have actively hidden comments on their Facebook advertisements in order to suppress negative material information from actual users who would report the same experiences of scalp burns and hair loss as reviewers on Amazon have reported, as well as other material facts the Cel MD Defendants seek to hide from their customers.

64.   On information and belief, some of the endorsers used in Cel MD's videos and video advertising were beneficiaries of undisclosed compensation or were paid actors and actresses.

65.   On information and belief, and based on the structure of Cel MD's advertising, website, and sales funnel, all purchasers of the Cel MD products, including Plaintiff, would have been exposed to and would have viewed reviews that were fake, compensated for without disclosure, which featured photos or videos of non-customers, or which manipulated to make it appear as if the overall reviews were more positive than they actually were.

66.   The Cel MD Defendants made material omissions regarding their customer reviews and misled consumers by omitting material information which they were under a duty to disclose relating to their reviews. The Cel MD Defendants failed to disclose to

consumers who viewed their videos, their Amazon page, their website, or their Facebook advertisements that some of their reviews and endorsements were fake, compensated for without disclosure, featured images of individuals who were not the reviewer, or which were manipulated to make it appear as if the overall reviews were more positive than they actually were. While the Cel MD Defendants made limited disclosures on a separate page on their website that some of their reviews and endorsements were compensated, that disclosure is of no legal relevance because it was made on a separate page and was not made in proximity to the reviews or endorsements, and because the disclosure contained material omissions (for example, that some reviews were fake or manipulated or that the photos were not of actual customers, as well as the true nature of the actual compensation).

67.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that they had written the reviews themselves, that the photos were not of actual customers or reviewers, that the reviews or endorsements were compensated for, or that reviews were manipulated to make it appear as if the overall reviews were more positive than they actually were.

68.     Plaintiff did not know this, and it was difficult to discover because information about the authorship of reviews or the compensation and identity of the authors is non-public.

69.     The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted negative comments on their Facebook ads, as described further herein.

70.     On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it.

71.    On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

72.    The Cel MD Defendants were further under a duty to Plaintiff because they made partial representations—that the reviews reflected the statements of customers or endorsers and their actual appearance—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that the reviews were authored by Cel MD employees or were fake, that reviewers or endorsers were compensated, that they featured photos who were not the reviewer, or that they were manipulated to make it appear as if the overall reviews were more positive than they actually were.

73.    The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by including the omitted information in proximity to the reviews on the Cel MD website, by including prominent disclaimers in the Cel MD videos, by including a prominent disclaimer on its Amazon product descriptions, and/or by including prominent disclaimers in the text or videos on its Facebook advertisements.

74.    These omissions are designed to induce consumers to purchase the Cel MD products based on the positive and enthusiastic endorsements of the fake or paid reviewers. As a result of these omissions, Plaintiff purchased products they would not have or paid more for them than they otherwise would have.

75.    The Cel MD Defendants' omissions regarding their customer reviews were material to all consumers, including Plaintiff. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because the experience of other consumers and the ratings other consumers give to products are important in a reasonable consumer's purchasing decision. A product with highly positive reviews is reasonably considered by consumers to be more valuable than a product

with bad reviews. Whether or not consumer reviews are fake, involved compensation, were manipulated, or use pictures of stock models would be important to a reasonable consumer.

### Misrepresentations and Omissions Regarding Plant Stem Cells

76.     A core selling point across the Cel MD product line—repeated throughout the Cel MD Defendants' advertising and its website—is that the products contain "plant stem cells" which can miraculously cure ailments such as hair loss or skin problems. The company name as well as the product names includes references to plant stem cells, suggesting that Cel MD's products work using some sort of plant stem cell technology. But this is false, and the Cel MD Defendants further omit a crucial fact from these statements that they are obliged to disclose: that "stem cells" they utilize are in fact dead plant stem cells that have been processed and turned into extract, not live stem cells, and thus they cannot be effective for hair loss or skin care. *See* Ex. 1 at 4-7.

77.     The Defendants' claims about plant stem cells are pervasive and, on information and belief, would have been viewed by every customer of the Cel MD products.[22]

78.     The product packaging for the Cel MD products prominently makes these misrepresentations. For example, the bottle label for both the Cel MD Shampoo and Conditioner states: "This specialized stem cell hair formula contains a blend of hair-strengthening and stimulating ingredients. Our unique three-stage formula helps repair

---

[22] E.g. Cel MD Facebook Page, https://www.facebook.com/stemcellmdtech/videos/302877597273302/?v=302877597273302 (last visited June 20, 2019); https://www.facebook.com/watch/?v=584986425248487 (last visited June 25, 2019); https://www.facebook.com/watch/?v=375481709898653 (last visited July 1, 2019); https://www.facebook.com/watch/?v=584986425248487 (last visited July 1, 2019); https://www.facebook.com/watch/?v=262621244685737 (last visited July 1, 2019); https://www.facebook.com/watch/?v=593499861160717 (last visited July 1, 2019); https://www.facebook.com/watch/?v=567763017045877 (last visited July 1, 2019); https://www.facebook.com/watch/?v=769988723400483 (last visited July 1, 2019); https://www.facebook.com/watch/?v=289061205112777 (last visited July 1, 2019); https://www.facebook.com/watch/?v=1492061334264309 (last visited July 1, 2019); https://www.facebook.com/watch/?v=2305197056416196 (last visited July 1, 2019); https://www.facebook.com/watch/?v=685912108492624 (last visited July 1, 2019).

damaged hair cells and provides the ideal nutrients for thick, luscious hair."

79.     This claim is also made on the exterior of the boxes which the Cel MD Shampoo and Conditioner are contained in.

80.     The other Cel MD products contain near-identical representations on the product packaging. On information and belief, all of the Cel MD products make similar claims on their packaging: that the products utilize a stem cell formula.

81.     Cel MD represents and warrants that its Brow & Lash Boosting Serum "[e]ncourages high cell turnover to promote new hair growth," "strengthens brows and lashes to promote fullness," and "Uses Plant Stem Cell Technology To Actively Boost Eyelashes & Eyebrows."

82.     But these claims are false. There is no "stem cell formula" in the products, let alone one which can regrow hair, skin, eyelashes, and nail cuticles. The Cel MD products do not contain stem cells—they contain, at best, extract which has been processed with chemicals. And because of this processing, the products cannot "help repair damaged hair cells" or strengthen or stimulate hair, grow human cuticles or eyelashes, or penetrate human skin to rejuvenate it from the inside, as Defendants represent and warrant.

83.     Every customer of the Cel MD products is exposed to these misrepresentations because they appear on the labels and packaging, and customers rely on these misrepresentations in purchasing the products, in not exercising their right to return the products within the return period, and in maintaining their subscriptions. In video advertisements on Youtube, the Cel MD Defendants refer to extracting stem cells from the ginseng plant, which "have been proven to combat hair thinning and hair loss" and which "Cel have formulated into a shampoo...."[23]

84.     Youtube videos which are embedded in the Cel MD website make similar representations, including that the product is "formulated with rejuvenating plant stem cells

---

[23] Cel MD Youtube Page, https://www.youtube.com/watch?v=HN_8fe6SSWc (last visited June 21, 2019).

… to actively help block DHT, nourish hair follicles, combat hair loss, and thicken hair."[24]

85.    The Cel MD website is and has been permeated with representations that their products contain beneficial plant stem cells.

86.    While the structure of the Cel MD website has changed over time, the Defendants have not removed similar representations from their advertising leading customers to that website, have not removed it from the labels and packaging, and continue to make these representations on their website itself.

87.    For example, the Cel MD Defendants represented on their website that their products utilize a plant stem cell technology:[25]

> Ever wondered how our Stem Cell Shampoo can transform your hair making it stronger, healthier and more resilient to future damage?
>
> Working with beauty experts in South Korea, we were able to produce our specialized Nanotech formula and optimize it for home-use. Our shampoo is highly effective, ensuring your hair is strong and protected, and your scalp is the optimum condition for healthy hair growth!

88.    This page goes on to provide a detailed description of how the "Nanotech formula" in the Cel MD Shampoo supposedly works:[26]

---

[24] Cel MD Youtube Page, https://www.youtube.com/watch?v=bqVLk37Uj0M (Cel MD Microstem Hair Stimulation Formula) (last visited June 23, 2019); *see also* https://www.youtube.com/watch?v=S6x6QcT3Tsk (Cel MD Stem Cell Neck Cream) (last visited June 23, 2019); https://www.youtube.com/watch?v=CaEsRDMoEbY (Cel MD Stem Cell Rejuvenating Hand Cream) (last visited June 23, 2019); https://www.youtube.com/watch?v=1DMp__y_MKY (Cel MD Microstem Hair Stimulation Formula) (last visited June 23, 2019); https://www.youtube.com/watch?v=8t7v_oXnBWE (Cel MD Microstem Hair Stimulation Formula) (last visited June 24, 2019); https://www.youtube.com/watch?v=eoEOoZyN3HI (Cel MD Shampoo and Conditioner) (last visited June 24, 2019); https://www.youtube.com/watch?v=oPhqvnYN9M8 (Cel MD Overnight Regeneration Cream)(last visited June 24, 2019); https://www.youtube.com/watch?v=p84Fuf_4iFw (Cel MD Brow & Lash Boosting Serum) (last visited June 24, 2019); https://www.youtube.com/watch?v=RGQKQQUzZ9A (Cel MD Shampoo and Conditioner) (last visited June 24, 2019).
[25] Cel.md, https://www.cel.md/blog/5-science-driven-reasons-our-shampoo-gives-you-thicker-healthier-hair (last visited Mar. 16, 2020).
[26] *Id.*

A plant stem cell is a type of cell that's capable of self-renewal. They can adapt to other cell forms when needed, and work to repair damage, boost regeneration and support healthy growth. When used in haircare, the stem cells encourage the formation of new hair and hair pigments. Plant stem cells also increase the lifespan of the hair follicles, so the hair can stay in the anagen phase of the hair for longer, preventing hair fall-out.

As we age, our hair follicles either become dormant completely or shrink in size. When they shrink in size it means that they still produce hair, but it's much lighter, thinner and more brittle than before so it appears like there is no hair growth at all. Using Stem Cells in your haircare routine helps to prevent this premature hair loss by stimulating the dormant follicles and encouraging thicker, stronger growth.

89.     On information and belief, the Cel MD Defendants do not use a "Nanotech formula" in their products.

90.     In another article, the Cel MD Defendants claim that plant stem cells can replace damaged human cells, increase collagen, repair human cells, and increase the production of human skin cells:[27]

Plant stem cells are what's known as undifferentiated cells, and are found in the meristems of vegetation. They work like human stem cells, in the sense that they have the ability to self-renew and replace damaged cells. This is how a plants grow back when a stem has been cut.

In the same way the cells work to repair damaged plant cells, they will help to repair the skin cells from damage and boost collagen - hitting rewind on aging skin.

Although different to human stem cells, they're still capable of replacing the damaged cells in the skin and increasing the production of human skin cells and collagen.

91.     The article goes on to claim that Cel MD's plant stem cell technology is better than human stem cell technology, both because it is safer and because it can heal and repair

---

[27] https://stemcellmdtech.myshopify.com/blogs/news/human-stem-cells-vs-plant-stem-cells-which-one-is-better-for-younger-skin (last visited Mar. 16, 2020).

skin "in a much more controlled way:"[28]

Besides the ethical issues surrounding human stem cells, the main problem with using them in our skincare routine is that they can over-stimulate our cells, leading to unwanted results and in the worst case, diseases. They're much harder to control than plant stem cells.

Plant stem cells on the other hand can heal & repair skin in a much more controlled way then human cells. Put simply, the likelihood of a severe skin reaction using plant stem cell technology is extremely small vs using human stem cells which is relatively high. This is precisely the reason we built our range of beauty products using Plant Stem Cell Technology only.

Take our best-selling Stem Cell Face Mask for example. The skin on your face is the most sensitive area on your body so it was very important for us that plant stem cells delicately interacted with skin to promote healing. Using human stem cells instead would likely result in more adverse skin reactions which we absolutely do not want!

This same rationale also applies to many of our other products that target sensitive skin areas. Our Stem Cell Eye Serum is another great example of a product that greatly benefits from a plant stem cell formulation vs human stem cell formulation. In any scenario where you deal with skin around the eyes, we wanted to make 100% sure our eye serum would provide 1) optimal skin healing but more importantly 2) not lead to any adverse skin reactions. Hence using plant stem cells!

As a final note, it is important to mention that plant stem cells, though safer to apply, still contain many of the benefits of human stem cells. It was important for us not to sacrifice any of the potential benefits of stem cells by taking the plant route. Our Stem Cell Neck & Decolletage Cream is a great example of a plant stem cell solution that works phenomenally well at tightening and firming skin around your neck. In fact, many of our customers say it works BETTER than other human-formulated stem cell products they've bought!

When it comes to human and plant stem cells, they both work in a similar way. The only real difference is that human stem cells can be a little more potent, but when it comes to working to activate your skin cells, plant stem

[28] *Id.*

cells work just as well. While researchers develop more effective ways to use human stem cells in skincare, plant stem cells remain the most powerful and transforming technology in the skincare market!

To browse our range of Plant Stem Cell skincare products, click through this link!

92.     Each of the representations made by the Cel MD Defendants above omits the full truth: that the plant stem cells contained in the Cel MD Defendants' products have been processed and turned into "extract," such that the cells are no longer alive and cannot provide the theoretical benefits of plant stem cells that the Cel MD Defendants are referring to in their sales materials. A detailed analysis of this issue is contained in the attached Preliminary Expert Report from Dr. Robert Farrell, a Professor of Biology at Penn State York with a background in plant and animal cell biology. Ex. 1. That analysis is incorporated here by reference.

93.     The Cel MD Defendants' website cites an article in a journal called Future Science OA titled "Plant stem cells in cosmetics: current trends and future directions." The Cel MD Defendants describe this article on their website as a "[s]tudy showing the potential benefits of stem cells for combating hair loss."[29] The citation is described as supporting a statement by the Cel MD Defendants that the Cel MD Shampoo and Conditioner products include "Ginseng Stem Cells to boost hair follicle health & strengthen hair."

94.     The article is not a "study" as the Cel MD Defendants claim—it is a journal article surveying research in the field, and it makes clear that "[r]esearch on the use of plant stem cells as skin care is still in its infancy."[30]

95.     The article does not include the words "ginseng" or "asparagus" and includes no discussion of ginseng or asparagus stem cells, the two types of plants that pervade the

---

[29] Cel.Md, https://www.cel.md/pages/wg-shampoo-conditioner-1 (last visited June 19, 2019).
[30] Sonia Trehan, Bozena Michniak-Kohn, & Kavita Beri, *Plant stem cells in cosmetics: current trends and future directions*, 3 Future Sci. OA (2017), available at https://www.future-science.com/doi/10.4155/fsoa-2017-0026 (last visited June 19, 2019).

Cel MD Defendants' representations to their customers.[31]

96.    But the authors of the article explain: "In fact, almost all cosmetic companies advertising to contain stem cells in their products actually contain stem cell extracts and not the live stem cells. … the actual stem cells in cosmetic formulations are already dead. Extracts from stem cells cannot act in the same way as the live stem cells. … To gain all the authentic benefits from stem cells and to let them work the way they are promised to in skin care applications, they need to be incorporated as live cells and should remain so while in the cosmetic formulation."[32]

97.    The authors of the very article the Cel MD Defendants rely on in making their scientific claims concludes that the plant stem cell extracts contained in such cosmetics are not effective.[33]

98.    To the extent "plant stem cells" are used in the Cel MD products they are not live cells, and as such are not effective, do not provide benefits to consumers, and do not function in the way that a live stem cell would. Ex. 1 at 5. Instead, the Cel MD products contain extract—dead plant material which has no connection or relation to any of the ongoing scientific speculation or research regarding the potential of live plant stem cells. The process of creating extract generally involves using chemicals (for example, alcohols) to remove raw materials in a way that would be certain to kill any plant stem cells.[34]

99.    The ingredients for the Cel MD products make clear that they contain **extract**, not live plant stem cells.[35]

100.    On information and belief, to the extent the Cel MD Defendants use plant stem cells, those plant stem cells as part of a **manufacturing process** to create plant material and not as a live, active ingredient. Ex. 1 at 6. In other words, once turned into extract, those cells are no longer alive and the resulting plant material is functionally no different

---

[31] Id.
[32] Id.
[33] Id.
[34] Extract, https://en.wikipedia.org/wiki/Extract (last visited June 19, 2019).
[35] Cel.Md, https://www.cel.md/pages/ingredients-alti (last visited June 19, 2019).

than any other plant material harvested directly from a plant grown naturally.

101.   Notably, the Cel MD Defendants give varying and mutually inconsistent explanations to their customers of how their "plant stem cell" technology purports to work. While primarily telling their customers that their products contain plant "stem cells," at other times the Cel MD Defendants have claimed that instead the products contain plant exosomes, stating: "We extract the exosomes from plant stem cells which provide the perfect transport mechanism to penetrate the hair follicle and deliver our formula."[36]

102.   Exosomes are a type of vesicle, a particle that is released from a cell to carry "cargo" outside of the cell wall.[37] They are not cells and are likewise not stem cells. Ex. 1 at 6-7.

103.   As with their other explanations of how their products work, the Cel MD Defendants appear to have taken their marketing language from news articles or other sources about future areas of research. The Cel MD Defendants then claim to have made astounding discoveries in these areas of research.

104.   The Cel MD Defendants cannot provide consistent explanations as to how their products actually work: in some cases they claim the product utilizes plant stem cells themselves, in others they claim to utilize peptides, in others to use the genetic engineering technology of "splicing," in others to have developed "super bacteria" which has been combined with ginseng stem cells, and in still others to utilize exosomes extracted from plant stem cells. In the ingredients for the products, however, they claim to use extract, chemically processed plant material which is no longer living.

105.   The details do not matter to the Cel MD Defendants: they are simply spouting scientific mumbo-jumbo at their customers with the common theme of plant stem cells. They are well aware that most customers will not be trained scientists and will not have

---

[36] Cel MD Facebook Page, https://www.facebook.com/watch/?v=806688903035987 (last visited June 27, 2019).
[37] Exosome (vesicle), https://en.wikipedia.org/wiki/Exosome_(vesicle) (last visited August 16, 2019); Extracellular vesicle, https://en.wikipedia.org/wiki/Extracellular_vesicle (last visited August 16, 2019).

any reason to question the representation that there is some sort of advanced plant stem cell formula in the products which can cure hair loss or help their skin.

106.   The Cel MD Defendants uniformly misrepresent to their customers that the Cel MD products contain plant stem cells or a stem cell formula based on plants. This is false, as the products do not contain stem cells but instead contain chemically treated extract which cannot function as the Defendants claim.

107.   The Cel MD Defendants also deceived their customers by omission by failing to disclose the information that the plant stem cells in their products are extract containing dead plant cells, not live stem cells, and that they thus cannot provide the theoretical benefits to skin and hair that some scientists believe living plant stem cells might provide in the future.

108.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely the methods by which the plant stem cells in their products are processed and the difference between live and dead stem cells.

109.   Plaintiff did not know this, and the information was difficult to discover because it requires scientific expertise, as well as information regarding the Cel MD Defendants' proprietary manufacturing process for the plant stem cells which purportedly takes place in Korea.

110.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter, which include hiding or deleting on their Facebook ads any by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering such negative information.

111.   The Cel MD Defendants were further under a duty to Plaintiff and because they made partial representations—that plant stem cells or live plant stem cells can help improve hair or skin conditions, which some scientists believe could be true in the future—

but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that plant stem cells must be living at the time of application to provide these theoretical benefits, and that any plant stem cells contained in the Cel MD products are dead plant material or extract.

112.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by including the omitted information in proximity to the representations on the Cel MD website, by including prominent disclaimers in its videos, descriptions, and advertisements.

113.   These omissions are designed to induce consumers to purchase the Cel MD products. As a result of these omissions, Plaintiff purchased products they would not have or pay more for them than they otherwise would have.

114.   The Cel MD Defendants' omissions regarding plant stem cells were material to consumers. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because they are seeking to purchase the products to obtain the theoretical benefits of plant stem cells, which they cannot actually benefit from since the products at issue do not contain live plant stem cells.

115.   The Cel MD Defendants further knew that they were misrepresenting to consumers that their products contained plant stem cells or a stem cell formula. As a result of these misrepresentations, consumers purchased products they would not have or paid more for them than they otherwise would have, or they retained products for longer than they otherwise would have and were damaged.

116.   The Cel MD Defendants' misrepresentations regarding stem cells were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations in deciding whether to purchase the Cel MD products because if they knew that the products did not contain plant stem cells or a stem cell formula, and that the products could not as a matter of biology provide the claimed health

benefits, consumers would not have purchased the products or would have paid less for the products. Plaintiff thus reasonably relied upon these representations in making their purchase decisions.

<u>**Omissions Regarding Deceptive Timers**</u>

117.   Another way the Cel MD Defendants deceive consumers on their website is through fake countdown timers—clocks that pop-up on the screen and pretend to count down to the impending expiration of a large discount.

118.   The timers are fake because at the end of the deadline nothing whatsoever happens. The "discount" is not being "reserved" for the customer for a limited time as the timer states. Rather, the timer simply stops counting at 1 second—and the customer is welcome to purchase at the same price whether they purchase within the 20-minute deadline or whether they wait as long as they please.

119.   On information and belief and based on a review of the Cel MD website, Plaintiff encountered, and every customer who purchases from the Cel MD website will encounter, a timer claiming that product or discounts have been reserved, with no actual effect on the customer's ability to purchase or purchase price.

120.   The Cel MD Defendants made material omissions regarding the timers on their website by omitting material information which they were under a duty to disclose relating to those timers. The Cel MD Defendants failed to disclose to Plaintiff and other consumers who viewed the timers that the products could still be purchased, and that any discounts remained available after the timers had counted down.

121.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that at the end of the countdown, nothing whatsoever would happen to the discount or product and the consumers would still be able to purchase at that discounted price.

122.   Plaintiff did not know this, and given the nature of the timer, it was difficult to discover because the Plaintiff would have to run the risk of permanently losing a

significant discount should they let the timer run out without a purchase being made. Even if Plaintiff had tested the timer, she lacked the specialized knowledge of computer code necessary to determine whether the timer had stopped in error or because it was programmed to.

123.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter.

124.   The Cel MD Defendants were further under a duty to Plaintiff because they made partial representations—that a discount was available to them and had been applied—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that there was in fact no time limit on that reservation and the discount could be claimed and the product could be purchased after the timer ran out.

125.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by including the omitted information in proximity to the timers on the Cel MD website.

126.   These omissions are designed to induce consumers to purchase the Cel MD products by creating a false sense of urgency for customers, misleading customers into impulse purchases they would not have otherwise made by convincing them that , if they wait, they will either face a sudden and substantial price increase or that they will not be able to purchase the products at all. As a result of these omissions, Plaintiff purchased products she would not have or paid more for them than she otherwise would have.

127.   The Cel MD Defendants' omissions regarding their timers were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these omissions in deciding whether to purchase the Cel MD products because if the countdown has no bearing on the availability of the product or discounts, consumers would not feel the need to purchase on impulse and under time pressure that did not exist.

**Representations Regarding Limited Supply**

128.   As part of the check-out process, customers who order Cel MD products on the Cel MD website are subjected to false representations designed to make them believe that there is a limited supply of products and that they should add additional products to their order to avoid the risk of Cel MD running out of those products.

129.   After a customer completes a purchase of a Cel MD product, the customer is taken to a web page featuring an embedded Youtube video of a woman stating: "You know, ever since we released [product name], the results have been so incredible that our stock goes into backorder due to high demand. So I urge you to stock up today before it's too late."[38]

130.   Cel MD made near-identical videos of the same woman repeating the same for various products, and then shows the consumer a video making the claim about products they purchased: [39]

131.   Whichever product they purchase, customers who purchase a product on the Cel MD website are exposed to a series of "upsell" pages for other Cel MD products attempting to convince the consumer to add additional products to their order. In addition to the videos, the pages contain text representations that Cel MD is having difficulty keeping the "upsell" products in stock.

132.   On information and belief, every customer who purchases from the Cel MD website is exposed to these representations, with the only difference being the name of the product inserted into the false claim. But these representations are false—Cel MD's stock is not in backorder, and it is not about to be "too late" for consumers to purchase the Cel MD products.

---

[38] Cel MD Youtube Page, https://www.youtube.com/watch?v=2zWCxNSwvcM (last visited June 20, 2019).
[39] Cel MD Youtube Page, https://www.youtube.com/watch?v=1huvDP-Hhe8 (last visited June 20, 2019).

133.   Cel MD has been making these claims that its products were on backorder with limited stock since at least August 15, 2018, when it first uploaded the Youtube "upsell" videos which it embeds on its website. From at least August 15, 2018 to the present, Cel MD has been making these claims of product shortages to each of its customers, without any variation in the supposed status of its backorders.

134.   These misrepresentations are designed to induce consumers to add additional products to their orders and to induce them to sign up for or maintain subscription payments which were part of their order. As a result of these misrepresentations, consumers purchase products they would not have or pay more for them than they otherwise would have, or they retain products for longer than they otherwise would have and are damaged by losing access to Cel MD's limited time money-back guarantees.

135.   The Cel MD Defendants' misrepresentations regarding their limited supply or backorders were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these misrepresentations in deciding whether to purchase the Cel MD products because if they knew that the products were not limited in supply and could be purchased at any time, consumers would not feel the need to purchase on impulse and under time pressure that did not exist and would not have added additional quantities to their orders based on these representations. Plaintiff thus reasonably relied upon these representations in making her purchase decisions.

**Omissions Regarding Side Effects**

136.   The Cel MD Products can have serious side effects caused by either allergic reactions to one or more of the ingredients or to chemical contamination. These include allergic reactions, anaphylactic shock, swelling, itching, red skin, scabs, burning, stinging pains, headaches, and hair loss. Many customers have reported these side effects on Amazon. The Cel MD Defendants have acknowledged that they are aware that these side effects can occur and have stated that they are caused by allergic reactions to the ingredients in their products, but only in response to specific complaints by customers in Amazon reviews—buried in the comments to the over 1000 reviews on the Amazon website for the

Cel MD products and directed only at people who have already been injured.

137.    Nowhere on the Cel.MD webpage, in its Youtube video advertisements, in its Facebook advertisements or Facebook page, on its Instagram page, or on its Amazon sales pages do the Cel MD Defendants disclose any kind of risks of side effects to its products or their ingredients.

138.    A variety of Cel MD customers on Amazon have reported side effects to their products, including itchy bumps, and swelling.

139.    One customer reported suffering a life-threatening illness as a result of using the Cel MD Shampoo: "I used it ONCE. It appears that I may be allergic as I had to go to the emergency room via ambulance. Anaphalack shock (sic)."[40] One would expect that a company that read a report like this about one's own product would attempt to warn customers or to investigate whether there was in fact an allergen (or something more serious such as a chemical contamination). But the Cel MD Defendants read this review and responded to it with nothing more than an offer to refund the price of a bottle of shampoo.

140.    Numerous other customers reported irritation of their scalp or other allergic reactions caused by the Cel MD products.

141.    The Cel MD Defendants specifically stated that they knew some of their ingredients could cause allergic reactions: "Sorry to hear this. It is very uncommon, but some people do get adverse reactions to one of the ingredients."[41]

142.    In another case, this Cel MD employee not only admitted knowledge of the side effects but also provided medical advice to a customer reporting that the product was

[40] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R2KBGQKKFH8QTC/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited Oct. 30, 2019).
[41] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1OQ0D30Y22A6B/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019); *see also* https://www.amazon.com/gp/customer-reviews/R2UXQ97ENBGG4Q/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).

thinning her hair. The Cel MD employee's advice was not to stop using the product, but instead to cut down the number of times per week they used the product and "see if you are still reacting to it!"[42] This statement constitutes medical advice and on information and belief was made by a Cel MD employee without a medical license. As such these statements are unlawful and constitute the unauthorized practice of medicine in California. Cal. Bus. & Professions Code § 2052.

143.   This language appears to have been form medical advice provided by Cel MD employees to customers who complained of side effects, as it was repeated to others, as was the admission that "some people do get adverse reactions:"[43]

144.   Additionally, one of the Cel MD employees who repeatedly responded to customer complaints on Amazon was an Amazon user who identified himself as "Jack—Founder of Cel MD."[44] The account for "Jack" responded specifically to several complaints that the Cel MD products caused hair loss, and thus the user behind the "Jack" account would have had specific knowledge of these side effects and customer complaints regarding them. "Jack" lists his location as New York, NY.[45]

145.   Nowhere on the Cel MD website are these known side effects and allergic reactions or chemical reactions disclosed.

146.   Nowhere in the Cel MD Facebook advertisements or Youtube videos are these known side effects and allergic reactions or chemical reactions disclosed.

---

[42] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1V71TR9P0DMZE/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[43] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/RED4XLEKNX30R/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[44] Amazon Review of Cel MD Shampoo & Conditioner, https://www.amazon.com/gp/customer-reviews/R1T4RDMHO4KAVJ/ref=cm_cr_arp_d_rvw_ttl?ie=UTF8&ASIN=B07D7HRVDL (last visited June 25, 2019).
[45] Profile of Jack—Founder of Cel MD, https://www.amazon.com/gp/profile/amzn1.account.AF3ADZCDBRTZJXVN5D4X3CF2YZTQ/ref=cm_cr_getc_d_pdp?ie=UTF8 (last visited June 25, 2019).

147.   Nowhere on the main pages of Cel MD's Amazon Product pages are these known side effects and allergic reactions or chemical reactions disclosed. The only location any statement regarding this issue was made is in comments responding to reviews reporting to those reactions on Amazon, which are accessible only after multiple clicks away from the purchasing page and only after finding and reading those specific reports from customers.

148.   Cel MD's products bear a warning label that states the following: "Warnings: Stop using this product if you experience any symptoms on the area this product was applied, including red spots, swelling, itching, or irritation. If the symptoms worsen, consult a dermatologist immediately. If you experience side effects (burning, hair loss, rashes) please stop using the product immediately."

149.   This warning is only provided to consumers after they have purchased the Cel MD products. The warning fails to disclose that these are known side effects which have occurred with other customers. And it fails to disclose the specific ingredient which the Cel MD Defendants told certain Amazon customers they knew to cause these allergic reactions.

150.   The Cel MD Defendants made material omissions regarding the side effects caused by their products by omitting material information which they were under a duty to disclose relating to those side effects. The Cel MD Defendants failed to disclose to consumers that their products were known to cause side effects including allergic reactions to one or more the ingredients, reactions, anaphylactic shock, swelling, itching, red skin, scabs, burning, stinging pains, headaches, and hair loss. The Cel MD Defendants further were aware of at least one ingredient in their products that caused allergic reactions, but failed to disclose this knowledge to consumers and failed to disclose which ingredient it was.

151.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that their products caused these side effects and that there is an ingredient in their products which causes allergic reactions.

152.   Plaintiff did not know this, and given the nature of the side effects, it was difficult to discover because the Plaintiff purchased the products from the Cel MD site where they fail to disclose the negative reviews on Amazon, or otherwise provide any warning of side effects.

153.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted comments on their Facebook ads containing negative material information, as described further herein.

154.   On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements using the "Hide Comment" feature in order to suppress negative information about their products and to prevent potential customers from discovering it.

155.   The specific comments alleged to have been hidden herein specifically related to accusations that Cel MD products cause hair loss, one of the reported side effects, and the Cel MD Defendants actively concealed that information from customers at least by hiding those customer comments on Facebook.

156.   On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

157.   The Cel MD Defendants were further under a duty to Plaintiff because they made partial representations and warranties—that their products were "safe," did not have side effects like competing products, and contained no negative or "nasty" ingredients—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that there were in fact side effects (even if they differed from those in competing products), were not safe for all consumers, and their products did in fact contain ingredients which could be negative or "nasty" in that they caused allergic

reactions.

158.   The Cel MD Defendants represented to various customers on Facebook that their products lacked side effects.

159.   Despite knowing and acknowledging in response to negative reviews on Amazon that "some people do get adverse reactions to one of the ingredients," the Cel MD Defendants gave medical advice to a recovering cancer patient on Facebook that "[r]elying on plant stem cells and natural minerals means every bottle is filled with hair-positive effects and nothing nasty you need to worry about."[46]

160.   Not only did the Cel MD Defendants fail to disclose these side effects, but in their interactions with customers on Facebook and Amazon, the Cel MD Defendants show a despicable lack of concern for their customer's health that is so vile, base, and contemptible that it would be looked down on and despised by reasonable people. Customers with hair loss from severe health conditions were encouraged to simply try the Cel MD products, even in cases where a doctor's advice would have been crucial. The Cel MD Defendants did not disclose the known existence of side effects and instead played doctor themselves, urging patients with severe medical problems that the solution to their ills was to purchase snake oil. The Cel MD Defendants showed no regard whatsoever for the health issues or emotional stress these customers were facing—all that mattered was closing the sale at any cost.

161.   As might be expected from a company staffed by unqualified marketers posing as doctors under the "MD" banner, the unlicensed medical advice the Cel MD Defendants doled out was not even consistent. While diagnosing brain surgery patients with an urgent need to try the Cel MD products to cure hair loss from surgical scarring, just a few weeks before the Cel MD Defendants had advised another victim of scarring that "it is unlikely any product would claim to resurrect follicles that are entirely dead (as in the

---

[46] Cel MD Facebook Page, https://www.facebook.com/watch/?v=375481709898653 (last visited June 27, 2019).

case of scar tissues)."[47]

162.   The Cel MD Defendants told a cancer patient who had suffered scarring and hair loss after surgery for melanoma that the Cel MD Shampoo and Conditioner would "give your follicles & hair the best chance of re-stimulation and thicker, healthier growth."[48] Again, the Cel MD Defendants' efforts to act as the medical practice they held themselves out to be were inconsistent: this advice contradicted their prior medical advice that hair loss from scarring could not be cured by their products.

163.   The Cel MD Defendants told a cancer patient who had recently undergone chemotherapy that "we have many customers who've seen impressive results using Cel Hair Serum after chemo, as it helps support the health of the hair follicle and get it back to proper working order.... Especially after the effects of chemo, it's important hair is supplied with all available proteins and fatty acids that it needs."[49]

164.   When asked whether they should speak to a doctor before using the Cel MD products, the Cel MD Defendants specifically advised a customer not to: "No that is not necessary at all. There is no need to see an MD before using the serum just make sure you don't have any intolerance to any of the ingredients."[50]

165.   Such statements are among many others the Cel MD Defendants, who lack medical licenses, have made online via Facebook to individuals with serious medical conditions, all under the name "Cel MD." These statements are unlawful, constitute the unauthorized practice of medicine in California. Cal. Bus. & Professions Code § 2052. They therefore violate the unlawful prong of the California UCL.

166.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the

---

[47] Cel MD Facebook Page, https://www.facebook.com/watch/?v=806688903035987 (last visited June 27, 2019).
[48] Cel MD Facebook Page, https://www.facebook.com/watch/?v=593499861160717 (last visited May 27, 2019).
[49] *Id.*
[50] Cel MD Facebook Page, https://www.facebook.com/watch/?v=302877597273302 (last visited June 25, 2019).

aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by including the omitted information in a prominent position on the Cel MD website, by including prominent disclaimers in (i) the Cel MD videos, (ii) its Amazon product descriptions, and (iii) in the text or videos on its Facebook advertisements.

167.   These omissions are designed to induce consumers to purchase the Cel MD products. As a result of these omissions, Plaintiff purchased products she would not have or paid more for them than she otherwise would have.

168.   The Cel MD Defendants' omissions regarding side effects were material to consumers. A reasonable consumer would attach importance to these omissions in deciding whether to purchase the Cel MD products because had they known that the products could cause serious side effects, they would not have paid as much for them or would not have purchased them in the first place.

### Omissions Regarding Effects of Discontinuing Use of Cel MD Products

169.   Even if the Cel MD hair loss products have any effect on hair loss, it is undisputed that these effects are only temporary, and that any hair growth will be reversed if the customer stops using the Cel MD products. The Cel MD Defendants do not disclose this to their customers generally and did not do so in proximity to their many representations that the products help regrow hair or prevent hair loss.

170.   Tthe Cel MD Defendants admit that if a customer discontinues the use of their products, their hair growth will reverse, and their hair "will return to the condition it was in prior to using the product."[51] But the only place that the Cel MD Defendants deigned to inform their customers of this fact was when individual customers specifically asked about it in Facebook comments—buried among thousands of others.

171.   The Cel MD hair growth products (including Cel MD Microstem Shampoo, Cel MD Microstem Conditioner, Cel MD Brow & Lash Boosting Serum, Cel MD

---

[51] Cel MD Facebook Page, https://www.facebook.com/watch/?v=375653146380450 (last visited June 26, 2019).

Microstem Hair Stimulation Formula,) are all promoted with one general purpose: to help reverse hair loss and regrow hair. This is the entire point of buying them. On information and belief, Plaintiff and every other customer who purchases from the Cel MD website or from Amazon will encounter representations that these products help to regrow hair or prevent hair loss, as the very names of these products suggest.

172.   The Cel MD Defendants made material omissions regarding the ability of their hair growth products to regrow hair or prevent hair loss by omitting material information which they were under a duty to disclose relating to their efficacy. The Cel MD Defendants failed to disclose to consumers that any benefits from their hair growth products is temporary, and that if a consumer discontinues the use of these products their hair will return to its original condition.

173.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants had exclusive knowledge of material facts not known to them, namely that if a consumer discontinues the use of their hair growth products, their hair will return to its original condition.

174.   Plaintiff did not know this, and given the nature of the claim, it was difficult to discover because it would require scientific testing of the products or actual use of those products to discover. A consumer would not discover that the products could not provide any permanent benefits without buying it and testing it on themselves.

175.   The Cel MD Defendants were under a duty to disclose this information to Plaintiff because the Cel MD Defendants engaged in active concealment, and have engaged in affirmative acts of hiding, concealing, or covering up this matter. The Cel MD Defendants have hidden or deleted comments containing negative material information on their Facebook ads, as described further herein.

176.   On information and belief, the Cel MD Defendants have actively hidden numerous comments on their Facebook advertisements in order to suppress negative information about their products and to prevent potential customers from discovering it.

177.   On information and belief, the Cel MD Defendants have further engaged in active concealment by hiding, concealing, or gating negative reviews on TrustPilot in order to suppress material negative information about their products and to prevent consumers from discovering it.

178.   The Cel MD Defendants were further under a duty to Plaintiff because they made partial representations—that their products could help regrow hair or prevent hair loss—but also suppressed, concealed, or did not disclose material facts that qualify those representations, namely that any such benefits were temporary and that if a consumer stopped using the Cel MD hair growth products, their hair would return to its original condition.

179.   The Cel MD Defendants knew, or by the exercise of reasonable care should have known, that their omissions were untrue and misleading, and deliberately made the aforementioned omissions in order to deceive reasonable consumers like Plaintiff. Those omissions could have been corrected by including the omitted information in proximity to the representations on the Cel MD website, by including prominent disclaimers in (i) the Cel MD videos, (ii) its Amazon product descriptions, and (iii) the text or videos on its Facebook advertisements.

180.   These omissions are designed to induce consumers to purchase the Cel MD products by promising them hair growth, without informing them that any such growth would be temporary at best. As a result of these omissions, Plaintiff purchased products they otherwise would not have or paid more for them than they otherwise would have.

181.   The Cel MD Defendants' omissions regarding their products' ability to regrow hair or stop hair loss were material to consumers. A reasonable consumer would attach importance to the truth or falsity of these omissions in deciding whether to purchase the Cel MD products because if the hair growth was only temporary, the consumer might not be willing to buy the products at all, or might not be able to afford a permanent subscription to the Cel MD hair growth products and thus might not ever buy them in the first place.

**Evidence of Malice, Intent, and Knowledge of Wrongful Conduct**

182.   In addition to the misrepresentations, omissions, and other wrongful conduct described herein, the Cel MD Defendants have engaged in pervasive acts of dishonesty throughout their marketing practices. These wrongful acts are relevant to the instant action because they show that the Cel MD Defendants intentionally conspired to commit wrongful acts, intentionally aided and abetted wrongful acts, and the sheer volume of misrepresentations being made by them implies knowledge of the other wrongful acts underlying the causes of action herein.

183.   This pervasive dishonesty additionally serves as proof that the Cel MD Defendants should be obligated to pay punitive damages because they committed the acts underlying the instant causes of action with malice, oppression, or fraud, and that the Cel MD Defendants intended to cause injury, that their conduct was despicable, and that their behavior underlying the causes of action was so vile, base, and contemptible that it would be looked down on and despised by reasonable people.

184.   Many of the Cel MD Defendants' sales pitches read like bad science fiction stories. They told some of their customers that they operate an "advanced human stem cell cloning facility" which was used to make their Nanotech Stem Cell Facemask product: "The one-of-a-kind mask uses a patented stem cell cloning methodology. The process begins with consenting adult volunteers donating stem cells from their own body to a AAA grade stem cell cloning facility. There, the stem cells are cloned into new stem cell peptides, and then inserted into the mask. Upon contact with skin, these stem cell peptides act as a second 'super-skin', nourishing it from its deepest layers."[52]

185.   On information and belief, the Cel MD Defendants do not run, own, or otherwise operate a "stem cell cloning facility," do not engage in cloning of human stem cells, do not have or utilize any volunteers who are "donating stem cells from their own body," and have not developed a "super skin."

---

[52] Cel.MD, https://www.cel.md/products/4x-stem-cell-face-masks-one-month-supply-fbdg (last visited July 7, 2019); *see also* https://www.cel.md/collections/all/shopifydiscount (last visited July 7, 2019).

186.   If the Cel MD Defendants have in fact cloned human stem cells from volunteers in an advanced cloning facility and created a "super skin" based on human stem cells for inclusion in their products, those ingredients are not listed on the labels for the products[53] and the Defendants have violated a variety of state and federal laws by incorporating those cloned human cells without any kind of disclosure. *See* Ex. 1 at 7.

187.   If the Cel MD Defendants are instead simply making up a ridiculous sci-fi story about "super skin" and a non-existent human stem cell cloning facility in an effort to deceive their customers into purchasing their products, it is proof of their knowledge, intent, and malice for the various causes of action herein.

188.   "Super skin" is not the only improbable discovery the Cel MD Defendants claim to have made. They also claim to have developed "super bacteria" and "super biotin" at a laboratory they operate in South Korea.

189.   The Cel MD Defendants' website claims that Cel MD has a "South Korean lab" staffed by "South Korea beauty specialists."[54] Those specialists supposedly "spent 2 years perfecting this formula with our US Stem Cell Experts."[55]

190.   Claims about South Korean scientists are repeated throughout the Cel MD Defendants' website—but with varying descriptions of the supposed scientists and their expertise. The Cel MD website repeatedly invokes the involvement and qualifications of these Korean scientists in varying and often contradictory language regarding its line of products: "working closely with leading Korean 'plant stem cell' scientists," "CREATED BY US & KOREAN STEM CELL SKIN CARE EXPERTS," "[c]reated by US Stem Cell Experts, and perfected for your own home-use, by Nanotech beauty experts in Seoul, South Korea," "[e]xpertly selected by US & South Korean skin scientists," "PERFECTED IN OUR SOUTH KOREAN LABORATORY," "our talented group of Korean scientists," and

---

[53] *See* Cel.MD, https://www.cel.md/pages/ingredients-alti (last visited July 7, 2019).
[54] Cel.Md, https://www.cel.md/collections/stem-cell-cuticle-oil (last visited June 17, 2019); Cel.Md, https://promos.cel.md/dmxchfgift/index.php (last visited June 18, 2019).
[55] *Id.*

"Hundreds of hours of research and development by our Korean beauty experts, combined with our U.S. scientists."[56]

191.   On information and belief, the Cel MD Defendants do not employ Korean scientists.

192.   The Cel MD website also claims that these South Korean scientists created a "super bacteria" which they have combined with ginseng stem cells for use in the Cel MD products.[57]

193.   On information and belief, the Cel MD Defendants have not developed a "super bacteria," and to the extent there is such a "super bacteria" that Cel MD has combined with ginseng stem cells using its Korean beauty/skin/nanotech/plant stem cell scientists, the Cel MD Defendants have violated various state and federal laws by not getting approval for and then disclosing the existence of this "super bacteria" in its ingredients. *See* Ex. 1 at 7.

194.   The Cel MD Defendants claim that their Nanotech Stem Cell Face Mask "is made from millions of plant-based stem cell peptides that communicate with your own stem cells telling them to produce beautifully clear, glowing skin."[58] They further tell customers that this product "**actually rewires your skin** to repair and regenerate as if it were young again" (emphasis in original).[59] Instead of Korean scientists, this page attributes the miracle product to "[a] NY based stem cell expert."[60] Regardless of who developed this product, as discussed herein in the "Misrepresentations and Omissions Regarding Plant Stem Cells" section, the plant material in Defendants' products is extract,

[56] Cel.Md, https://www.cel.md/pages/wg-shampoo-conditioner-1 (last visited June 18, 2019); Cel.Md, https://www.cel.md/collections/face-packs-alti (last visited June 18, 2019); https://www.cel.md/collections/eye-serum-alti (last visited June 18, 2019); https://www.cel.md/collections/shampoo-and-conditioner (last visited June 18, 2019); https://promos.cel.md/bwxcspsteps/index.php (last visited June 18, 2019);
[57] Cel.Md, https://www.cel.md/pages/microbiome-skincare (last visited June 18, 2019).
[58] Cel.Md, https://www.cel.md/pages/why-stem-cell-md-decided-to-offer-a-free-trial-on-top-selling-product-1 (last visited July 29, 2019).
[59] *Id.*
[60] *Id.*

meaning that it has been treated with solvent, any cells are no longer alive, and it is physically impossible for them to communicate with human stem cells or to "rewire" human skin.

195.    The Cel MD Defendants provide inconsistent stories about who has created the super skin, the super bacteria, the super biotin, and the magical skin rewiring capabilities. On some portions of their website, the Cel MD Defendants abandon their Korean scientists, and instead claim that it was scientists in the United States who created their products: "[o]ur patented, nanotech (sic), plant-based formula was created in the US by a leading Stem Cell expert to effectively combat hair thinning and loss."[61] Another page claims that the Cel MD shampoo and conditioner products were "MADE BY US HAIR LOSS & STEM CELL EXPERTS."[62] And another claims that Cel MD's Nanotech Stem Cell Face Mask was "[d]eveloped by a group of America's leading stem cell experts."[63]

196.    Other parts of the Cel MD website refer to its formulas being selected by doctors in the United States: "Our powerful blend of ethically sourced, nutrient-rich ingredients have been carefully selected by US doctors to create a technologically advanced neck & décolletage formula."[64]

197.    These claims are mutually exclusive: either the Korean beauty/skin/nanotech/plant stem cell scientists or "America's leading stem cell experts" created their products, but the Cel MD Defendants cannot make up their mind as to which.

198.    The Cel MD Defendants also claim their products have received approvals from the Food and Drug Administration ("FDA"). This includes a statement on their website regarding their Nanotech Stem Cell Face Mask that "the mask was cleared by the FDA this year, confirming that it is 100% safe to use."[65]

---

[61] Cel.Md, https://www.cel.md/collections/shampoo-and-conditioner (last visited June 18, 2019).
[62] Id.
[63] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June 21, 2019).
[64] Cel.Md, https://www.cel.md/collections/cel-neck-decolletage-cream-dtcc (last visited June 18, 2019).
[65] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June 21, 2019).

199.   On Amazon, the Cel MD Defendants represent to the customers of their shampoo and conditioner that "[o]ur products are FDA approved...."[66]

200.   The Cel MD Defendants represented and warranted in a "Frequently Asked Questions" section on their website with the question: "Are Stem Cell products FDA approved?" Their response was: "Yes! In early 2017 Cel MD was granted FDA approval for our masks to sell to consumers and other businesses. The approval board recognized the high quality of ingredients and expedited the process approval."[67]

201.   Prior to the August 2019 redesign of their website, the Cel MD Defendants included a lengthy description of the process of their supposed "Testing & FDA Approval."[68]

202.   On information and belief, the Cel MD Defendants do not have FDA approvals for their products, and they lied to their customers about the government having approved them in order to make their products seem safer and more reliable.

203.   Another way the Cel MD Defendants imply government approval of their products to their customers is to represent that they own patents on the formulas used in their products. For example, they claim to their customers that they have created "Cel's patented and expertly refined plant stem cell formula."[69] They claim that "[o]ur powerful, patented healing formula is scientifically proven to promote younger looking skin." [70] The Cel MD website refers to their "patented absorption technology," [71] "our patented anti-aging plant stem cell technology,"[72] "[t]he one-of-a-kind mask uses a patented stem cell

---

[66] CEL MD Stem Cell Hair Growth Thickening Shampoo and Conditioner for Women and Men, https://www.amazon.com/ask/questions/Tx2XEQE1VP3605W/ref=ask_ql_ql_al_hza (last visited June 26, 2019).

[67] Cel.Md, https://www.cel.md/pages/ingredients-testing (last visited Aug. 1, 2019).

[68] Cel.Md, https://www.cel.md/pages/about-alti (last visited Feb. 25, 2019).

[69] Cel.Md, https://www.cel.md/pages/cel-science (last visited June 17, 2019).

[70] Cel.Md, https://www.cel.md/collections/skin-care (last visited June 21, 2019).

[71] Cel.Md, https://www.cel.md/collections/congratulations-nanotech-stem-cell-face-masks-stem-cell-eye-serum-bundle (last visited June 21, 2019).

[72] Cel.Md, https://www.cel.md/collections/neck-cream-alti/promoted (last visited June 21, 2019).

cloning methodology," [73] and "[t]he patented nano-technology in our skin care range." [74] Cel MD Youtube videos contain similar representations.[75]

204.   Patent searches using Google Patents for Christopher Masanto, Andrew Masanto, Cel MD, Amplify Limited, Altitude Ads, and the Cofoundant defendants do not reveal any patents named under any of the Cel MD Defendants or relating to any of their products.

205.   The Cel MD Shampoo, Conditioner, and Microstem Hair Stimulation Formula are not marked on their packaging with any patent numbers pursuant to 35 U.S.C. § 287. On information and belief, none of the other products are marked with patent numbers.

206.   On information and belief, there are either no patents on the Cel MD products, formulas, and technology, or the Cel MD Defendants have misrepresented the patents of third parties as if they were their own. On information and belief, to the extent the Cel MD Defendants were referring to the patents of third parties, those patents do not cover the technologies that the Cel MD Defendants represent that they do.

207.   These claims are designed to induce consumers to believe that there has been some level of government review of and approval of the Cel MD products through the patent application and approval process, as well as to believe that because the products or technologies are supposedly patented, they are innovative or function more effectively, and that Cel MD has a monopoly on the technology they are using in their products (which is not true if the patents are owned by another entity).

208.   In some of their advertisements, the Cel MD Defendants tout a "clinical trial" that purports to prove the efficacy of their products. These results are referred to in Cel

---

[73] Cel.Md, https://www.cel.md/collections/all/send_to_checkout (last visited June 21, 2019).
[74] Cel.Md, https://www.cel.md/blogs/news/should-your-morning-evening-skincare-routine-be-different (last visited June 21, 2019).
[75] Cel MD Youtube Page, https://www.youtube.com/watch?v=CTpdK-gy_YY (last visited June 24, 2019); https://www.youtube.com/watch?v=eoEOoZyN3HI (Cel MD Shampoo and Conditioner) (last visited June 24, 2019).

MD's Youtube videos, which are embedded into its website and are referred to as a "clinical trial" and "clinically proven to boost hair growth in" men and women.[76] The Cel MD Defendants' Facebook video advertisements similarly represent the results to be from a "clinical trial."[77]

209. A "clinical trial" is generally understood by the public to refer to a four-phase process conducted before the FDA in which the safety and efficacy of a product is thoroughly tested, reviewed by the FDA, and ultimately tested on thousands of people to verify that they work and have no side effects.[78]

210. In fact, the results touted by the Cel MD Defendants are from a "clinical study," a privately conducted study with no controls, no involvement by the FDA, no testing for side effects, and conducted on only 88 people for sixteen weeks.[79] That clinical study was conducted without outside supervision, without disclosure of the underlying data, without peer review, and by the same people who were willing to tell their customers that their products contained super skin, super biotin, and super bacteria. *See* Ex. 1 at 3-4.

211. By telling their customers that their products had been through a "clinical trial," as opposed to a self-conducted private clinical study, the Cel MD Defendants reinforced their representations that the FDA had approved their products with the false suggestion that their products had been reviewed by the government for safety and efficacy.

---

[76] Cel MD Youtube page, https://www.youtube.com/watch?v=1DMp__y_MKY (last visited June 23, 2019); see also https://www.youtube.com/watch?v=8t7v_oXnBWE (last visited June 24, 2019); https://www.youtube.com/watch?v=CTpdK-gy_YY (last visited June 24, 2019); https://www.youtube.com/watch?v=vo5jrU1Ydo0 (last visited June 24, 2019).
[77] Cel MD Facebook page, https://www.facebook.com/stemcellmdtech/videos/387636158519820/?v=387636158519820 (last visited June 25, 2019); https://www.facebook.com/watch/?v=302877597273302 (last visited June 25, 2019); https://www.facebook.com/watch/?v=375653146380450 (last visited June 26, 2019).
[78] *See* National Institute on Aging Website, https://www.nia.nih.gov/health/what-are-clinical-trials-and-studies (comparing clinical trials to clinical studies) (last visited July 8, 2019).
[79] Cel MD Study One Pager, https://cdn.shopify.com/s/files/1/1847/3469/files/Clinical_trial_1_pager_1.pdf?12422248425525136086 0 (last visited July 8, 2019).

212.   Taken together, these representations make it clear that the Defendants' conduct here was knowing and willful.

## JOINT AND SEVERAL LIABILITY OF ALL DEFENDANTS FOR DECEPTIVE AND FALSE ADVERTISING, FOR UNFAIR AND UNLAWFUL COMPETITION, FOR BREACH OF WARRANTIES, FRAUD, AND PRODUCTS CLAIMS OF STRICT LIABILITY AND NEGLIGENCE

213.   Under California's False Advertising Law and Unfair Competition Law, any person who participates in a scheme to engage in unfair business practices can be held liable.

214.   As sellers of Cel MD Products, all Defendants are liable under the direct, agency, alter ego, or successor-in-interest liability for breach of warranties, strict products liability claims, negligent manufacture, design, and failure to warn of Cel MD products.

215.   Agency and aiding and abetting: Under the California Unfair Competition Law, "Any person, who, *either as director, officer or agent* of any firm or corporation *or as agent of any person*, violating the provisions of this chapter, *assists or aids, directly or indirectly*, in such violation is responsible therefor *equally with the person, firm or corporation for which he acts*." Cal. Bus. & Prof. Code § 17095.

216.   Conspiracy: Under the California Unfair Competition Law, "[i]t is unlawful for any manufacturer, wholesaler, distributor, jobber, contractor, broker, retailer, or other vendor, *or any agent of any such person, jointly to participate or collude* with any other such person in the violation of this chapter." Cal Bus & Prof Code § 17048.

217.   Proof of intent: "In any injunction proceeding against any person as officer, director or agent, it is sufficient to allege and prove the unlawful *intent of the person, firm or corporation for which he acts*." Cal. Bus. & Prof. Code § 17096.

218.   Veil Piercing: Under the California False Advertising Law, it "is unlawful for *any person, firm, corporation or association, or any employee thereof* with *intent directly or indirectly* to dispose of real or personal property . . . or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated

before the public in this state . . . in any newspaper or other publication, or any advertising device . . . including over the Internet, any statement, concerning that real or personal property . . . or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading, or for *any person, firm, or corporation* to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property . . . as so advertised." Cal. Bus. & Prof. Code §17500.

219.   All of the Defendants are alter egos of one another, do not follow corporate formalities, and are liable for one another's actions as alter egos. Amplify Limited (which nominally contracted with Plaintiff) is a "voided" corporation under both Delaware and California law because its registered agents have resigned, and it has been in this status for almost an entire year without correcting it. It has done so intentionally in an effort to evade service of process. On information and belief, and based on this failure to keep its corporate status active in either state and its lack of any employees or physical assets in the US, Amplify Limited is undercapitalized. Defendants do not follow corporate formalities, in that Altitude Ads attempted to register the U.S. trademark rights for the products, even though Amplify Limited purportedly owns the rights to the products, and Altitude Ads employees hired and worked with attorneys to draft the terms of service at issue for Amplify Limited. The entities further commingle their assets and resources without regard for corporate formalities, in that Altitude Ads operated the website and created the products and the advertising, and then transferred its employees and the ownership of the products to the Cofoundant entities to evade liability. The companies all share a common set of employees and a common set of offices in the United Kingdom. Andrew Masanto works for these companies and advises them without having a formal role, and has bragged about doing so in a Forbes article.[80] It would be inequitable not to treat these entities/individuals

---

[80] https://www.forbes.com/sites/nisaamoils/2020/07/22/from-crypto-to-pet-supplements-the-brothers-who-have-bottled-exponential-growth-around-communities/?sh=945986019c0a.

as alter egos of one another because the corporate structure is a sham designed to avoid liability, frustrate creditors, prevent service of process by improperly failing to appoint registered agents, avoid document discovery requests, and avoid jurisdiction in the United States even though the UK-based entities are in fact the ones conducting most of the activities.

220.   **Defendant Christopher Masanto** is personally liable for the deceptive, unlawful, and fraudulent acts alleged herein. As CEO of Cel MD, he is liable as an officer and agent of Cel MD for violations of California's consumer protections because he directly and indirectly aided and assisted the violations herein. He is liable to the same extent as the corporation for which he acts. As a principal for Cel MD, Amplify Limited, Altitude Ads, Blooming Investments Limited, and Cofoundant LTD and Cofoundant Holdings Limited, he is liable for the unfair business practices of any agent within the scope of his authority, even if he lacks actual knowledge of any agent's actions.

221.   **Defendant Andrew Masanto** is personally liable under the above agency theories, for aiding and abetting, and for conspiracy. He describes himself in his biography as having "founded" Altitude Ads, the parent company and creator of Cel MD.[81] He has conducted hiring on behalf of Altitude Ads. He created another skin care company that represented selling products identical to those that Cel MD sells.

222.   **Defendant Amplify Limited** is directly liable for all of the claims and violations alleged herein because it is the entity which nominally sells Cel MD and which nominally interacted with Ms. Lopo.

223.   **Defendant Altitude Ads Limited ("Altitude Ads")** is directly liable for all of the claims and violations alleged herein because its employees directly committed the violations and created the false advertising at issue. It is further liable under veil piercing theories because it did not follow corporate formalities as the parent corporation of Amplify Limited.

---

[81] Reserve, https://reserve.org/our-team (last visited June 22, 2019).

224.   **Cofoundant LTD** and **Cofoundant Holdings Limited** are liable under a single-enterprise alter ego theory of liability for "sister companies." These entities are liable for the unlawful acts of Altitude Ads, Amplify Limited, and Cel MD because there exists such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another, or multiple companies form a single enterprise. Failure to hold these entities liable will result in inequities as described *supra* if the acts in question are treated as those of one corporation alone, when in reality, the corporations integrate their resources to achieve a common business purpose.

225.   **Cofoundant LTD** and **Cofoundant Holdings Limited are also liable as successor-in-interest to Cel MD.** Defendant Christopher Masanto is listed as the owner, operators, or beneficiary in interest of Cofoundant LTD and Cofoundant Holdings Limited in their corporate documents. Cofoundant LTD and Cofoundant Holdings Limited were mere continuations of Altitude Ads, and kept the same employees. The ownership of and assets relating to Cel MD were transferred into these companies as part of a "de-merger" which was sham transaction intended for the fraudulent purpose of avoiding liability in this action and other pending litigation, thus they are liable for the conduct of their predecessors-in-interest.

## CAUSES OF ACTION
## FIRST CAUSE OF ACTION
### Violation of Magnuson-Moss Warranty Act
### 15 U.S.C. §§ 2301, *et. seq.*

226.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

227.   The amount in controversy of Plaintiff's individual claims meet or exceed $25, and the amount in controversy for all claims to be determined by this lawsuit meets or exceeds $50,000. 15 U.S.C. § 2310(d)(1).

228.   The Magnuson-Moss Warranty Act provides a cause of action for any consumer who is damaged by the failure of a supplier or warrantor to comply with a written warranty, an implied warranty, or obligations under the Act. 15 U.S.C. § 2310(d)(1).

229.   Plaintiff is a "consumer" under the act as a buyer of any consumer product. 15 U.S.C. § 2301(3).

230.   Defendants are "warrantor[s]" as "any supplier or other person who gives or offers to give a written warranty" and who is "obligated under an implied warranty." Defendants are suppliers "engaged in the business of making a consumer product directly or indirectly available to consumers." 15 U.S.C. § 2301(4)–(5).

231.   Defendants' Microstem Hair Stimulation Formula, Brow & Lash Boosting Serum, Microstem Shampoo, and Microstem Conditioner are "consumer product[s]" because they are "tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes." 15 U.S.C. § 2301(1).

232.   Defendants' claims and representations are written warranties, which means "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time." *Id.* § 2301(6)(A). "Statements or representations of general policy concerning customer satisfaction" fall under the Act's requirements if the policy is "subject to any specific limitations," such as "express limitation of duration or a limitation of the amount to be refunded." 16 C.F.R. § 700.5.

233.   Defendants expressly warranted to customers with thinning hair and/or hair loss that their haircare Products "encourage new hair growth," "fight hair loss," "strengthen hair," "promote new hair growth," "use natural components [to] block the hormone DHT, known to advance hair loss," and "encourage high cell turnover to promote new hair growth." They warranted that the Brow & Lash Boosting Serum "[e]ncourages high cell turnover to promote new hair growth," "strengthens brows and lashes to promote fullness,"

and "Uses Plant Stem Cell Technology To Actively Boost Eyelashes & Eyebrows." These claims constitute an affirmation of fact, promise, and/or description of the goods, the Products, that became part of the basis of the bargain. This created an express warranty that the Products would conform to the stated promise and that consumers would receive advertised benefits. Plaintiff placed importance on Defendants' hair loss, hair growth, anti-aging, and other claims.

234.   Defendants breached the terms of this contract, including the express warranties, with Plaintiff by not providing products that conform to their affirmations and promises relating to hair loss prevention, hair growth, anti-aging, and other advertisements, as described herein.

235.   As set forth in the section entitled "Misrepresentations and Omissions Regarding Plant Stem Cells," Defendants specified that use of their products over time would "promote hair growth," "rewire your skin," "block DHT," "combat hair loss," thicken hair," "encourage the formation of new hair and hair pigments," "increase the lifespan of the hair follicles," "stimuat[e] dormant follicles and encourage[e] thicker, stronger [hair] growth."

236.   For products costing more than $15.00, the Act establishes federal minimum standards for written warranties: (1) requiring the warrantor to remedy products that fail to conform to warranties within a reasonable time; (2) prohibiting durational limits on any implied warranty unless it is "conscionable and is set forth in clear and unmistakable language and prominently displayed on the face of the warranty" as required by 15 U.S.C. § 2308(b); (3) prohibiting exclusion or limitation of consequential damages unless the limit appears on the face of the warranty; and (4) for defects in the product, allowing the customer to elect either a refund or replacement product at no charge after a reasonable number of attempts by the warrantor to remedy the breach. 15 U.S.C. § 2304(a).

237.   Defendants' Terms and Shipping & Return Policy prohibits customers from receiving refunds unless the product is returned to them unused, sealed, and unopened in violation of the § 2304(a)(1) requirement for products that fail to conform to written

1  warranties.

2  238. Defendants unlawfully prohibit customers from electing a refund or

3  replacement for defective products by refusing returns and refunds for products that lack a

4  money-back guarantee, are opened, or were purchased more than 30 days prior to the

5  request in violations of § 2304(a)(2), (4).

6  239. Defendants' exclusion and limitation of consequential damages in their

7  Terms violates § 2304(a)(3) because the limits do not appear on the face of the warranty.

8  240. The Act also prohibits disclaiming or modifying any implied warranty for a

9  product if a supplier makes a written warranty about that product, 15 U.S.C. § 2308(a).

10  Disclaimers, limitations, and modifications in violation of this section are unenforceable.

11  *Id.* § 2308(c).

12  241. Defendants make express warranties as described herein, and thus they

13  unlawfully disclaim implied warranties and unlawfully limit the warranty to 30 days,

14  rendering them unenforceable under 15 U.S.C. § 2308.

15  242. Federal regulations set minimum standards for warranties requiring clear and

16  conspicuous disclosure of nine categories of information that must be disclosed "in a single

17  document in simple and readily understood language." 16 C.F.R. § 701.3(a). The

18  requirements at issue include:

19        a. § 701.3(a)(2): A clear description and identification of products, or parts,

20            or characteristics, or components or properties covered by and where

21            necessary for clarification, excluded from the warranty;

22        b. § 701.3(a)(7): Any limitations on the duration of implied warranties,

23            disclosed on the face of the warranty as provided in section 108 of the Act,

24            15 U.S.C. 2308, accompanied by the following statement: Some States do

25            not allow limitations on how long an implied warranty lasts, so the above

26            limitation may not apply to you.

27  243. Defendants violate the § 701.3(a) "single document rule" by failing to include

28  all required information in one document, whether in their Terms, Shipping & Return

policy, or FAQ page, nor do any of these documents incorporate by reference the warranty information found in Defendants' other documents, ads, or on their website.

244.    Defendants violate the § 701.3(a)(2) requirement for clear identification of products that are covered by warranties and those that are excluded by failing to clearly indicate which products are sold with the "money-back guarantee" referenced in their Shipping Policy.

245.    The 30-day limit on refunds in Defendants' Terms and Return policy are not "disclosed on the face of the warranty" as required by § 701.3(a)(7), which for warranties on a website or displayed electronically means disclosure "in close proximity to the location where the warranty text begins," 16 C.F.R. § 701.1(j)(3).

246.    Plaintiff is entitled to damages and other equitable relief, and costs and expenses including reasonable attorneys' fees pursuant to 15 U.S.C. § 2310(d)(2).

## SECOND CAUSE OF ACTION

### Breach of Express Warranty to a Contract

### Cal. U. Com. Code §§ 2301, *et seq.*

247.    Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

248.    Plaintiff is a "buyer" under the California Uniform Commercial Code ("UCC"). Cal. U. Com. Code § 2103(1)(a).

249.    Defendants are "merchants" and "sellers" under the UCC. Cal. U. Com. Code §§ 2103(1)(d), 2104(1).

250.    Defendants' Products are "goods" under the UCC. Cal. U. Com. Code § 2105(1).

251.    Pursuant to the UCC, an express warranty is created as follows: "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise. (b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall

conform to the description." Cal. U. Com. Code § 2312(1)(a)–(b). No formal words are required to create an express warranty, nor does the seller have to have a specific intention to make an express warranty. *Id.* § 2312(2).

252. Defendants made express warranties and breached them as described in Plaintiff's First and Second Causes of Action.

253. Contractual provisions that purport to limit damages or liquidate damages are invalid if they fail the essential purpose of remedying breach under the UCC, and liquidating "consequential damages for injury to the person in the case of consumer goods is invalid unless it is proved that the limitation is not unconscionable." Cal. U. Com. Code § 2719.

254. Defendants' Terms are unconscionable and unenforceable because they exclude and limit personal injury damages, and they liquidate damages to "(I) USD $500.00, or (II) the total amount of money you paid to Amplify in the one (1) month period immediately preceding the incident on which your alleged claim is based."[82]

255. Pursuant to Cal. U. Com. Code § 2801, if a seller "issues a written warranty or guarantee as to the condition or quality of all or part of the goods which requires the buyer to complete and return any form to the manufacturer or seller as proof of the purchase of the goods, such warranty or guarantee shall not be unenforceable solely because the buyer fails to complete or return the form. . . . The buyer must agree in writing to any waiver of this section for the waiver to be valid. Any waiver by the buyer of the provisions of this section which is not in writing is contrary to public policy and shall be unenforceable and void."

256. Defendants' requirements in their Terms and Shipping & Return policies are unenforceable and contrary to public policy to the extent Defendants seek to enforce their policy requiring Plaintiff to submit a refund form within 30 days of purchase to enforce written warranties.

---

[82] https://cel.md/pages/terms-conditions (Section 13, last accessed February 28, 2021).

257.   Plaintiff is entitled to damages for breach of warranty for the value of the goods should they have performed as warranted, incidental damages, and consequential damages, which include "Injury to person or property proximately resulting from any breach of warranty." Cal. U. Com. Code §§ 2714(2)–(3), 2715.

## THIRD CAUSE OF ACTION

### Breach of Implied Warranty of Merchantability in a Contract

### Cal. U. Com. Code §§ 2301, et seq.

258.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

259.   When the seller is a merchant, "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Cal. U. Com. Code § 2314(1).

260.   The implied warranty of merchantability establishes minimum standards: "Goods to be merchantable must be at least such as (a) Pass without objection in the trade under the contract description; and (b) In the case of fungible goods, are of fair average quality within the description; and (c) Are fit for the ordinary purposes for which such goods are used; and (d) Run, within the variations permitted by the agreement, of even kind, quality and quantity within each unit and among all units involved; and (e) Are adequately contained, packaged, and labeled as the agreement may require; and (f) Conform to the promises or affirmations of fact made on the container or label if any." *Id.* § 2314(2).

261.   Defendants breached the implied warranty of merchantability because their products are unfit for their alleged ordinary purpose, are inadequately labeled, and fail to conform to the promises of fact made on Defendants' labels as described in Plaintiff's First Cause of Action and in as described in the above fact sections: "Misrepresentations and Omissions Regarding Plant Stem Cells," "Omissions Regarding Side Effects," and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products."

262.    Defendants' Terms are unenforceable as to any limitation of remedies or liquidation of damages to the same extent as for breach of an express warranty, as described in Plaintiff's Second Cause of Action.

263.    Plaintiff is entitled to actual damages, incidental damages, consequential damages, costs, expenses, and attorneys' fees for breach of implied warranty. Cal. U. Com. Code §§ 2714(2)–(3), 2715.

### FOURTH CAUSE OF ACTION

### Violation of the Consumer Legal Remedies Act

### Cal. Civ. Code §§ 1750, *et seq.*

264.    Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

265.    The Consumer Legal Remedies Act ("CLRA") prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

266.    Defendants' false and misleading labeling and other policies, acts, and practices were designed to, and did, induce the purchase and use of Defendants' Products for personal, family, or household purposes by Plaintiff, and violated and continue to violate the CLRA, Cal. Civ. Code § 1770, including the following subsections:

    a.    § 1770(a)(2): misrepresenting the source, sponsorship, approval, or certification of goods or services, in particular as described herein in the section titled "Omissions Regarding Reviews and Endorsements;"

    b.    § 1770(a)(3): misrepresenting the affiliation, connection, or association with, or certification by, another, in particular as described herein in the section titled "Omissions Regarding Reviews and Endorsements;"

    c.    § 1770(a)(5): representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, in particular as described herein in the sections titled "Omissions Regarding Reviews and Endorsements;" "Deceptive Brand Name and Omissions

Regarding the Cel MD Brand Name;" "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Representations Regarding Limited Supply;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products;"

`§ 1770(a)(7): representing that goods are of a particular standard, quality, or grade if they are of another, in particular as described herein in the sections titled "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products;"

d.   § 1770(a)(13): making false or misleading statements of fact concerning reasons for, existence of, or amounts of, price reductions, in particular as described herein in the sections titled "Omissions Regarding Deceptive Timers;" and "Representations Regarding Limited Supply;"

e.   § 1770(a)(19): by inserting an unconscionable provision in a contract, in particular the one-sided and unconscionable provisions of the terms of service on the Cel MD Website. This unconscionability permeates any purported terms of service, and these unconscionable terms have injured the Plaintiff by deterring them from enforcing their rights, and because the Defendants have relied on these illegal, unenforceable, and unassented-to terms of service in denying requests for refunds by Plaintiff.

267.   Defendants profited from their sales of the falsely, deceptively, and unlawfully advertised Product to unwary consumers.

268.   Plaintiff purchased the Products for personal use, in reliance on Defendants' false and misleading material claims described herein.

269.   Pursuant to Cal. Civ. Code § 1780(d), Plaintiff has attached an affidavit of venue hereto as Exhibit 2.

270.   As a result of Defendants' violations of the CLRA, Plaintiff has suffered irreparable harm and seeks injunctive relief prohibiting further violations of the CLRA.

Plaintiff also seeks to recover attorneys' fees and costs. Absent injunctive relief, Plaintiff may be injured by further deceptive practices by the Defendants. It is a common practice in the direct marketing industry to rename products or sell similar or identical formulas under different brand names, meaning that the Plaintiff may purchase other products from Defendants without knowing the source. Indeed, the Defendants have launched dozens of products under the Cel MD brand name, often referring to them by varying names, and have further launched a second skincare line already under a different name (Organica), as well as pet products and potentially others. Absent an injunction against these practices, the Defendants here are likely to attempt to deceive the Plaintiff and members of the public again with similar methods using other products or brand names.

## FIFTH CAUSE OF ACTION

### Violation of the California False Advertising Law

### Cal. Bus. & Prof. Code §§ 17500, *et seq.*

271.    Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

272.    Pursuant to California Business and Professions Code §§ 17500, *et seq.*, it is unlawful to engage in advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading . . . [or] to so make or disseminate or cause to be so made or disseminated any such statement as part of a plan or scheme with the intent not to sell that personal property or those services, professional or otherwise, so advertised at the price stated therein, or as so advertised." Cal. Bus. & Prof. Code § 17500.

273.    Defendants have violated the False Advertising Law, § 17500, *et seq.*, in particular as described herein in the sections titled "Omissions Regarding Reviews and Endorsements;" "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name;" "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Representations Regarding Limited Supply;" "Omissions Regarding Side Effects;" "Omissions Regarding Deceptive Timers;" and "Omissions Regarding Effects of

Discontinuing Use of Cel MD Products."

274.    Pursuant to § 17505, "No person shall state, in an advertisement of his goods, that he is a producer, manufacturer, processor, wholesaler, or importer, or that he owns or controls a factory or other source of supply of goods, when such is not the fact, and no person shall in any other manner misrepresent the character, extent, volume, or type of his business."

275.    Defendants have violated § 17505, in particular as described herein in the sections titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and "Representations Regarding Limited Supply."

276.    Defendants misled consumers by making misrepresentations and untrue statements about their products as described herein.

277.    Defendants misled consumers by omitting material information which they were under a duty to disclose as described herein. Defendants were under a duty to disclose this material information to Plaintiff.

278.    Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff. In particular and *inter alia*, this is evidenced by the outlandishness of the conduct described in the section titled "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct," as well as by the fake reviews and photos of customers described in the section titled "Omissions Regarding Reviews and Endorsements" and by the conduct by the Cel MD Defendants described in the section titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and elsewhere in this complaint.

279.    As a direct and proximate result of Defendants' misleading and false advertising, Plaintiff has suffered injury in fact and has lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, Plaintiff purchased the products at issue and paid more for those products than they would have had they been

aware that Defendants' representations were false. Plaintiff and ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff have suffered injury in fact.

280.   Defendant's representations were material to the decision of Plaintiff to purchase Defendant's products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendant in determining whether to purchase Defendant's products. With respect to the omissions by Defendant as described herein, those omissions were material and Plaintiff would have behaved differently if the information had been disclosed. Had Defendants disclosed the omitted information, Plaintiff would have been aware of it and would not have purchased the products from Defendant or would not have paid the same price for those products.

281.   Defendants advertised to Plaintiff through written representations and omissions made by Defendants and their employees that the Cel MD products would be of a particular nature and quality.

282.   The misleading and false advertising described herein presents a continuing threat to Plaintiff in that Defendants persist and continue to engage in these practices, and they will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Plaintiff is entitled to injunctive relief ordering Defendants to cease their false advertising, and Plaintiff is entitled to restitution.

## SIXTH CAUSE OF ACTION
### Violation of the Unfair and Fraudulent Prongs
### of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, et seq.

283.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

284.   As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct. Plaintiff suffered that injury at the time of

purchase, at the time of billing, and at the time of use.

285.   The Unfair Competition Law ("UCL"), California Business & Professions Code §§ 17200, *et seq*., prohibits "unfair competition," which includes "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

286.   Defendants committed "unfair" business acts or practices by, among other things: (1) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff; (2) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff; and (3) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

287.   The utility of the conduct committed by Defendants and as described herein is nonexistent. There is no utility to falsely suggesting to customers that an advertising agency is a medical practice, to pretending to be doctors, to making misrepresentations about and omitting crucial facts about how products applied to the human body work, to omitting easily provided warnings about side effects, to using fake customer reviews or photos, or to making misrepresentations about limited supplies or times in which customers can purchase those products. The harm to consumers caused by this conduct, by contrast, is significant. The Cel MD Defendants' conduct described herein not only deprived Plaintiff of the value they were expecting to receive but also risked their health and caused them to treat health conditions with ineffective products rather than alternative options.

288.   Defendants' conduct as described in this Complaint offends established public policies. The Defendants' conduct violates numerous statutes, as described further herein and in detail in the Fourth, Fifth, and Seventh Causes of Action. Those statutes exist for a reason: to protect consumers from unfair marketing practices, and in many cases to protect consumers' health. It is a particularly important public policy issue to avoid these kinds of

violations in products that relate to health care or that are applied to the human body given the risks of such violations.

289.   Defendants' conduct as described in this Complaint is immoral, unethical, oppressive, and unscrupulous, as well as substantially injurious to Plaintiff. In particular and *inter alia*, this is evidenced by the conduct described in the section titled "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct," as well as by the fake reviews and photos of customers described in the section titled "Omissions Regarding Reviews and Endorsements," by the conduct by the Cel MD Defendants described in the section titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" and elsewhere herein, and by the disregard for their customer's health and well-being, for example in the sections "Misrepresentations and Omissions Regarding Plant Stem Cells;" "Omissions Regarding Side Effects;" and "Omissions Regarding Effects of Discontinuing Use of Cel MD Products,"  and by the widespread dishonesty present in the Cel MD Defendants' marketing materials.

290.   Defendants' conduct as described in this Complaint violates the letter, spirit, and intent of the consumer protection laws. Their products amount to snake oil, marketed dishonestly and in violation of various consumer protection laws, as described herein and in the Causes of Action of this Complaint.

291.   As detailed herein, Defendants' unfair and/or fraudulent practices include disseminating false and/or misleading representations through their marketing and advertising.

292.   Defendants are aware that the claims or omissions they have made about the Products were and continue to be false and misleading.

293.   Defendants had an improper motive—profit before accurate marketing—in their practices related to their deceptive practices, as set forth herein.

294.   There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described herein. For example, Defendants could have removed the false and misleading representations from their

advertisements, provided omitted information the Plaintiff to avoid any deception, and could have complied with the law rather than violating the statutes as described in Plaintiff's Fourth, Fifth, and Seventh Causes of Action.

295.    As a direct and proximate result of Defendants' unfair or fraudulent business acts and practices and misleading and false advertising, Plaintiff has suffered injury in fact and has lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, Plaintiff purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false. Plaintiff ended up with Products that were overpriced, inaccurately marketed, and did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff has suffered injury in fact.

296.    Defendants' representations were material to the decision of Plaintiff to purchase Defendants' products, and a reasonable person would have attached importance to the truth or falsity of the representations made by Defendants in determining whether to purchase Defendants' products, as described in detail herein. With respect to the omissions by the Defendants as described herein, those omissions were material and Plaintiff would have behaved differently if the information had been disclosed. Had Defendants disclosed the omitted information, Plaintiff would have been aware of it and would not have purchased the products from Defendants or would not have paid the same price for those products. Similarly, had Defendants not engaged in the unfair and fraudulent business acts or practices described in this Complaint, Plaintiff would not have purchased the products from the Defendants or would not have paid the same price for those products.

297.    As purchasers and consumers of Defendants' Products, and as members of the general public who purchased and used the Products and have suffered injury in fact and lost money and property as a result of this unfair competition and unlawful conduct, Plaintiff is entitled to seek all available remedies under the UCL.

298.   The unfair and unlawful competitive practices described herein presents a continuing threat to Plaintiff in that Defendants persist and continue to engage in these practices, they and will not cease doing so unless and until forced to do so by this Court. Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Under Business & Professions Code § 17203, Plaintiff is entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiff is entitled to restitution.

### SEVENTH CAUSE OF ACTION
### Violation of the Unlawful Prong
### of the California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

299.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

300.   As alleged herein, Plaintiff has suffered injury in fact and lost money or property as a result of Defendants' conduct. Plaintiff suffered that injury at the time of purchase, at the time of billing, and at the time of use.

301.   The UCL, California Business & Professions Code §§ 17200, *et seq.*, prohibits "unfair competition," which includes "any unlawful . . . business act or practice . . . any act prohibited by Chapter 1 (commencing with Section 17500) of Part 3 of Division 7 of the Business and Professions Code." Cal. Bus. & Prof. Code § 17200.

302.   As detailed in Plaintiff's Fourth Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*

303.   As detailed in Plaintiff's Fifth Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the California False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*

304.   As detailed in Plaintiff's Sixth Cause of Action, the Cel MD Defendants' acts and practices are unlawful because they violate the unfair and fraudulent prongs of

California's UCL, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, which prohibits any "unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising . . . ."

305.    As detailed in the section of this Complaint titled "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name," the Cel MD Defendants' acts and practices are unlawful because they violate Cal. Bus. & Prof. Code § 2054, which provides that "[a]ny person who uses in any sign, business card, or letterhead, or in an advertisement. . . the initials 'M.D.,' or any other terms or letters indicating or implying that he or she is a physician and surgeon, physician, surgeon, or practitioner under the terms of this or any other law. . . is guilty of a misdemeanor."

### Unlawful Violations of Federal Trade Commission Regulations
### Concerning Use of Endorsements and Testimonials in Advertising
### 16 C.F.R. pt. 255, et seq.

306.    Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

307.    The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate federal regulations governing the use of endorsements and testimonials in advertising.

308.    Pursuant to 16 C.F.R. § 255.1(a), "an endorsement may not convey any express or implied representation that would be deceptive if made directly by the advertiser." Under § 255.1(c), "[a]dvertisers are subject to liability for false or unsubstantiated statements made through endorsements . . . ."

309.    The term "endorsement" means "any advertising message (including verbal statements, demonstrations, or depictions of the name, signature, likeness or other identifying personal characteristics of an individual or the name or seal of an organization) that consumers are likely to believe reflects the opinions, beliefs, findings, or experiences of a party other than the sponsoring advertiser, even if the views expressed by that party

are identical to those of the sponsoring advertiser." *Id.* § 255.0(b). "Endorsement" as used by the regulation means both endorsements and testimonials. *Id.* § 255.0(c).

310.    Endorsers include consumers who receive free products from advertisers through their marketing programs. *Id.* § 255.0 ex. 8. Endorsers also include third party bloggers who are compensated in any way by advertisers, and advertisers are subject to liability for misleading or unsubstantiated representations made by paid endorsers on their websites. 16 C.F.R. § 255.1 ex. 5.

311.    Under the regulations, advertisers have a duty to train endorsers and to monitor their statements, and to take necessary steps to halt continued publication of deceptive representations by endorsers. *Id.*

312.    Plaintiff incorporates by reference the Factual Allegations section of this Complaint, and in particular refers to the section relating to "Omissions Regarding Reviews and Endorsements."

313.    As that section describes, on information and belief, certain unknown third-party endorsers were compensated by Defendants as part of their reviews or appearances in Cel MD video advertisements, whether via free products or direct financial compensation. Neither the Cel MD Defendants nor these endorsers disclosed this compensation in proximity to their endorsements.  These individuals were endorsers under 16 C.F.R. pt. 255, *et seq.*, and the Cel MD Defendants are liable for these omissions.

314.    Defendants knew or should have known that those third-party endorsers had not disclosed such compensation in proximity to their reviews and endorsements.

315.    On information and belief, Defendants failed to provide training or guidance to these third-party endorsers to ensure that the endorsements did not include deceptive representations.  On information and belief, Defendants failed to monitor these endorsements and took no steps to halt the continued publication of these deceptive representations.

316.    Under 16 C.F.R. § 255.5, certain material connections between sellers of an advertised product and endorsers must be fully disclosed.

317.   The requirement to disclose material connections between advertisers and endorsers particularly applies reviews posted on websites or blogs where there is no "inherently obvious" relationship between the advertiser and the endorser. 16 C.F.R. § 255.5 ex. 7. To comply with the regulations, advertisers must require clear and conspicuous disclosure of material connections to endorsers on such third-party websites, and they must have procedures in place to monitor compliance by the endorser. *Id.*

318.   As described further in the "Omissions Regarding Reviews and Endorsements" section of this Complaint, reviews and advertisements on the Cel MD website, on Amazon, on Facebook, on Instagram, and on Youtube contained or constituted third-party endorsements for the Cel MD products, or were written by or made by employees of the Cel MD Defendants themselves.

319.   On information and belief, and as described in the factual background section of this Complaint, the Cel MD Defendants had a connection to these third-party endorsers that might materially affect the credibility of their endorsements. The Cel MD website states as much, but it buries this disclosure far away from the actual endorsements. The Cel MD Defendants further have material connections to the employees of Altitude Ads, who posed as customers and who were being compensated as employees.

320.   This material connection was not disclosed in proximity to any of the endorsements, and on information and belief was not fully disclosed on the Cel MD website.

321.   On information and belief, the Cel MD Defendants failed to require a clear and conspicuous disclosure of this material connection and had no procedures in place to monitor compliance by the third-party endorsers.

322.   Under 16 C.F.R. § 255.2(c), "[a]dvertisements presenting endorsements by what are represented, directly or by implication, to be 'actual consumers' should utilize actual consumers in both the audio and video, or clearly and conspicuously disclose that the persons in such advertisements are not actual consumers of the advertised product."

323.   The Cel MD Defendants presented endorsements appearing to be from actual consumers on their website, including photographs of those purported consumers. Similarly, the Cel MD Defendants included footage in video advertisements of endorsements from individuals who purported to be actual consumers of their products.

324.   In fact, the photographs of consumers on the Cel MD website are stock photos of models, stolen photos, or in some instances are employees of Altitude Ads. And on information and belief, the individuals in the video advertisements are paid actors and actresses and not actual consumers.

325.   Defendants failed to clearly and conspicuously disclose that these photographs and videos were not actual consumers, as described in the "Omissions Regarding Reviews and Endorsements" section of this Complaint.

326.   Such failure to clearly and conspicuously disclose as required by 16 C.F.R. § 255.2(c) is deceptive because the individuals featured in those photographs and video advertisements had healthy hair and skin which Cel MD customers would aspire to and which do not reflect the actual effects of Cel MD products.

327.   Under 16 C.F.R. § 255.3(a), "[w]henever an advertisement represents, directly or by implication, that the endorser is an expert with respect to the endorsement message, then the endorser's qualifications must in fact give the endorser the expertise that he or she is represented as possessing with respect to the endorsement."

328.   The regulations make clear that an endorsement is deceptive and unlawful if it misrepresents the applicability and scope of an endorser's professional training and experience. 16 C.F.R. § 255.3 ex. 1 (it is deceptive if a chemical engineer is described as an "engineer" in an endorsement of an automobile).

329.   The regulations also require that an advertiser "must make clear the nature and limits of the endorser's expertise" if the endorser does not have "substantial experience" in the area. 16 C.F.R. § 255.3 ex. 2 (a Ph.D. or a physician without substantial experience in the area of hearing may not be referred to as a "doctor" without clarification in an endorsement of a hearing aid).

330. As described in the "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" section of this Complaint, the Cel MD Defendants portrayed themselves as doctors by using the "MD" designation without disclosing that they did not have such expertise. They portrayed an employee writing an "article" under the name "Ryan Connor" as a "Stem Cell MD" when that person does not appear to exist, and on information and belief, is not a doctor to the extent he does exist.

331. As described in the "Evidence of Malice, Intent, and Knowledge of Wrongful Conduct" section of the Complaint, the Cel MD Defendants make a wide variety of inconsistent claims as to the expertise of their endorsers, claiming that their products were created by Korean individuals with varying fields of expertise, or by individuals from New York or the United States who were either doctors or stem cell experts.

332. Plaintiff was injured by this unlawful conduct and the violations of these regulations, as described in the "Omissions Regarding Reviews and Endorsements" and "Deceptive Brand Name and Omissions Regarding the Cel MD Brand Name" sections of this Complaint.

333. Defendants' actions with respect to its endorsers as described above are in violation of 16 C.F.R. pt. 255, *et seq.*, and thus constitute unlawful business acts or practices under the UCL.

**Unlawful Violations of the**

**Sherman Food, Drug, & Cosmetic Law**

**Cal. Health & Safety Code §§ 109875, *et seq.***

334. Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

335. The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate the California Sherman Food, Drug, & Cosmetic Law.

336. The Cel MD Defendants' products constitute cosmetics under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109900, a "cosmetic" is "any article, or its components, intended to be rubbed, poured, sprinkled, or

sprayed on, introduced into, or otherwise applied to, the human body, or any part of the human body, for cleansing, beautifying, promoting attractiveness, or altering the appearance."

337.   The Cel MD Defendants' products are cosmetics under this definition because every product sold by them is applied to the human body in some form, and every product sold by them is designed to beautify, promote the attractiveness of, or alter the appearance of skin or hair.

338.   The Cel MD Defendants' products also constitute drugs under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109925, a "drug" includes "[a]n article used or intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease in human beings or any other animal," and "[a]n article other than food, that is used or intended to affect the structure or any function of the body of human beings or any other animal."

339.   The Cel MD Defendants' products are drugs under this definition because they are not food and because they are intended to affect the structure or function of hair or skin, and claim to affect such structure or function.

340.   The Cel MD Defendants' products also constitute new drugs under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109980, a "new drug" includes "[a]ny drug the composition of which is such that the drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling or advertising thereof," or one that "has become so recognized, but that has not, otherwise than in the investigations, been used to a material extent or for a material time under the conditions."

341.   The Cel MD Defendants' products are not generally recognized among experts as being safe and effective for the conditions they are advertised to treat. The effectiveness of the individual ingredients in the Cel MD Defendants' products is not generally recognized, including ginseng and asparagus stem cells, plant stem cells

generally, biotin, arginine, glycerin, and other ingredients advertised as treating hair or skin.

342. The Cel MD Defendants' representations as described in this Complaint constitute advertisements under the Sherman Food, Drug, & Cosmetic Law. Pursuant to Cal. Health & Safety Code § 109885, an "advertisement" means "any representations, including, but not limited to, statements upon the products, its packages, cartons, and any other container, disseminated in any manner or by any means, for the purpose of inducing, or that is likely to induce, directly or indirectly, the purchase or use of any food, drug, device, or cosmetic."

343. The representations as described herein were likely to induce, directly or indirectly, the purchase of the Cel MD Defendants' products, which constitute drugs and cosmetics, and they did in fact induce such purchases as described in this Complaint. The representations were disseminated to the Plaintiff using various means, including advertisements on Facebook, Youtube, Instagram, Amazon, and on the Cel MD website.

344. Pursuant to Cal. Health & Safety Code § 110390, "[i]t is unlawful for any person to disseminate any false advertisement of any food, drug, device, or cosmetic. An advertisement is false if it is false or misleading in any particular."

345. Pursuant to Cal. Health & Safety Code § 110395, "[i]t is unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food, drug, device, or cosmetic that is falsely advertised."

346. The Cel MD Defendants violated Cal. Health & Safety Code § 110390 and § 110395 by disseminating false and misleading advertisements, as described in detail throughout this Complaint, and by selling, delivering, and offering for sale their products which were falsely advertised.

347. Pursuant to Cal. Health & Safety Code § 110403, "[e]xcept as otherwise provided in Section 110405, it is unlawful for a person to advertise a drug or device represented to have an effect in any of the following conditions, disorders, or diseases. . . (u) Conditions of the scalp, affecting hair loss, or baldness."

348.   The Cel MD Defendant's products are drugs, and thus it is unlawful for them to make representations that their products would have an effect on hair loss or baldness unless they fall within an exception.

349.   Cal. Health & Safety Code § 110405 provides a limited set of exceptions to this prohibition on such representations. Only "[a]n advertisement that is not unlawful under Section 110390" may qualify for those exceptions. As explained above, the Cel MD Defendants' representations are false or misleading in at least some particulars under Section 110390, and as such it is unlawful for Defendants to make **any** representations on their website, their product labels, or third-party websites claiming that any of their products have an effect on hair loss or baldness.

350.   Even if Defendants' representations are not false or misleading in any particular at all, on information and belief, Defendants do not meet any of the itemized exceptions under Cal. Health & Safety Code § 110405, and thus it was unlawful for them to advertise their products or to represent that their products have an effect on hair loss or baldness even if those representations had been true.

351.   The California Legislature has required, through Cal. Health & Safety Code § 110403 and § 110405(b), that hair loss or baldness products should not be advertised to the general public unless their efficacy and safety have been "approved or cleared for marketing for that specific curative or therapeutic effect" through at least one of an enumerated list of potential means of review of those products. Defendants' products are marketed to the general public, and as such cannot qualify for the exception under Cal. Health & Safety Code § 110405(a), which applies where the advertisements are only disseminated to medical professionals or for educational purposes.

352.   Cal. Health & Safety Code § 110405(b) provides a list of alternate means to allow hair loss or baldness products to be advertised to the general public. As with § 110405(a), false advertisements cannot qualify under any of these means.

353.   Cal. Health & Safety Code § 110405(b) provides that it is not unlawful if: "An advertisement that a drug or device has a specific curative or therapeutic effect on a

condition, disorder, or disease listed in Section 110403 if the drug or device is approved or cleared for marketing for that specific curative or therapeutic effect through any of the following means: (1)   A new drug application approved pursuant to Section 111500, or Section 505 of the federal act (21 U.S.C. Sec. 355); (2)   An abbreviated new drug application approved pursuant to Section 505 of the federal act (21 U.S.C. Sec. 355); (3) A licensed biological product pursuant to Section 351 of the Public Health Service Act (42 U.S.C. Sec. 262); (4)   A nonprescription drug that meets the requirements of Part 330 of Title 21 of the Code of Federal Regulations; (5)   A new animal drug application approved under Section 512 of the federal act (21 U.S.C. Sec. 360b); (6)  An abbreviated new animal drug application approved pursuant to Section 512 of the federal act (21 U.S.C. Sec. 360b); (7)   A new device application approved pursuant to Section 111550; (8)   A device premarket approval application approved under Section 515 of the federal act (21 U.S.C. Sec. 360e); (9)  A determination of substantial equivalence for a device pursuant to Section 513(f)(1) of the federal act (21 U.S.C. Sec. 360c(i))."

354.   Only subsections (1), (3), (4), (5), and (7) could even potentially apply to the Cel MD Defendants' hair loss products, but they do not—the products are not approved pursuant to a new drug application, are not licensed biological products, are not animal drugs, and are not devices. On information and belief, the Cel MD Defendants have not received approval for their products pursuant to a new drug application. The Cel MD Defendants cannot qualify under subsection (4) because their products are not generally recognized as safe and effective, and because they do not comply with the labeling requirements under Part 330 of Title 21 of the Code of Federal Regulations.

355.   These provisions were designed by the California Legislature to protect consumers from advertisements of unsafe or ineffective products for a list of serious health conditions by requiring at least some form of government review of those products. This failure to comply means that **all** of Defendants' advertisements and representations suggesting that the products at issue have an effect on hair loss or baldness are unlawful regardless of their truth or falsity.

356.   As stated above, Defendants' products are new drugs under the Sherman Food, Drug, & Cosmetic Law. *See* Cal. Health & Safety Code § 109980. New drugs are subject to specific approval requirements, and "[n]o person shall sell, deliver, or give away any new drug" unless the statutory requirements are satisfied. Cal. Health & Safety Code § 111550. One way to satisfy the requirements is that the product is a "new drug, and a new drug application has been approved for it and that approval has not been withdrawn, terminated, or suspended under Section 505 of the federal act (21 U.S.C. Sec. 355)." Cal. Health & Safety Code § 111550(a)(1). Another is that "[t]he department has approved a new drug or device application for that new drug or new device and that approval has not been withdrawn, terminated, or suspended." Cal. Health & Safety Code § 111550(b). The remaining methods are inapplicable to the Defendants' products, and on information and belief, Defendants have failed to satisfy the approval requirements for a new drug under the Sherman Food, Drug, & Cosmetic Law.

357.   In addition to the various forms of harm alleged throughout this Complaint, which Plaintiff incorporates here by reference, this particular violation specifically harmed Plaintiff by depriving them of the important and valuable protections of this statutory scheme, by causing them to purchase products whose efficacy and safety had not been verified, and by causing them to purchase the products at issue and pay more for those products than they were worth in the absence of statutory compliance.

358.   Defendants' actions with respect to its products as described above are in violation of Cal. Health & Safety Code §§ 109875, *et seq*., and thus constitute unlawful business acts or practices under the UCL.

<div align="center">

**Unlawful Violations of the**

**Federal Food, Drug, and Cosmetic Act**

**21 U.S.C. §§ 301, *et seq.***

</div>

359.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

360.   The Cel MD Defendants' acts and practices are unlawful under the California UCL because they violate the Federal Food, Drug, and Cosmetic Act.

361.   The Cel MD Defendants' products constitute drugs under the Federal Food, Drug, and Cosmetic Act. Pursuant to 21 U.S.C. § 321(g)(1), a "drug" includes "articles (other than food) intended to affect the structure or any function of the body of man or other animals . . . ."

362.   The Cel MD Defendants' products are advertised as affecting the structure or function of the human body and are intended to affect the structure or function of the human body. The Cel MD Defendants advertise that their products "stimulate hair follicles" and "promote hair growth at a cellular level."[83] They claim the ginseng stem cells in their products "[b]oost cell regeneration & stimulate collagen growth."[84] They claim that plant stem cells "[n]ourish the scalp and stimulate dormant follicles for optimum growth."[85] As described herein, they have claimed among other things that their products can rewire human skin, that they can function as a second "super skin," that the plant stem cells in their products can communicate with human cells to alter their functionality to improve hair or skin, and that they can increase the lifespan of hair follicles and cause hair to stay in the anogen phase for longer than it otherwise would.

363.   The Cel MD Defendants' products constitute new drugs under the Federal Food, Drug, and Cosmetic Act. Pursuant to 21 U.S.C. § 321(p)(1), a "new drug" includes "[a]ny drug (except a new animal drug or an animal feed bearing or containing a new animal drug) the composition of which is such that such drug is not generally recognized, among experts qualified by scientific training and experience to evaluate the safety and effectiveness of drugs, as safe and effective for use under the conditions prescribed, recommended, or suggested in the labeling thereof, except that such a drug not so recognized shall not be deemed to be a 'new drug' if at any time prior to June 25, 1938, it

---

[83] Cel.md, https://promos.cel.md/dmxcspsub2/index.php (last visited Nov. 18, 2019).
[84] Cel.md, https://promos.cel.md/emailcesflow/index.php (last visited Nov. 18, 2019).
[85] Cel.md, https://promos.cel.md/emailchm/index.php (last visited Nov. 18, 2019).

1   was subject to the Food and Drugs Act of June 30, 1906, as amended, and if at such time

2   its labeling contained the same representations concerning the conditions of its use . . . ."

3       364.   The Cel MD Defendants' products are not generally recognized among

4   experts as being safe and effective for the conditions they are advertised to treat. The

5   effectiveness of the individual ingredients in the Cel MD Defendants' products is not

6   generally recognized. The FDA has previously made determinations that products

7   constitute drugs when advertising biotin and arginine claiming the product can "prevent

8   hair thinning and hair loss and promotes healthy hair."[86] The Cel MD Defendants have

9   made the same claims about biotin and arginine in their products. The FDA has also

10   previously made determinations that products claiming to include plant stem cells for

11   improving skin constitute drugs.[87]

12       365.   Pursuant to 21 U.S.C. § 355(a), "No person shall introduce or deliver for

13   introduction into interstate commerce any new drug, unless an approval of an application

14   filed pursuant to subsection (b) or (j) is effective with respect to such drug."

15       366.   On information and belief, the Cel MD Defendants have not filed a new drug

16   application or obtained approval of any of their products from the Food and Drug

17   Administration. As such, it was unlawful for them to introduce or deliver their products

18   into interstate commerce, and **all** sales of their products in the United States were unlawful.

19       367.   In addition to the various forms of harm alleged throughout this complaint,

20   which Plaintiff incorporates here by reference, this particular violation specifically harmed

21   Plaintiff by depriving them of the important and valuable protections of this statutory

22   scheme, by causing them to purchase products whose efficacy and safety had not been

23

---

24   [86] Warning Letter to Orgen Nutraceuticals, Oct. 28, 2015, *available at* https://www.fda.gov/inspections-
25   compliance-enforcement-and-criminal-investigations/warning-letters/orgen-nutraceuticals-10282015
      (last visited Mar. 12, 2020).
26   [87] Warning Letter to Sircuit Skin, July 19, 2016, *available at* https://www.fda.gov/inspections-
      compliance-enforcement-and-criminal-investigations/warning-letters/sircuit-skin-07192016 (last visited
27   Mar. 12, 2020); Warning Letter to Annemarie Gianni Skin Care LLC, July 15, 2016, *available at*
      https://www.fda.gov/inspections-compliance-enforcement-and-criminal-investigations/warning-
28   letters/annemarie-gianni-skin-care-llc-07152016 (last visited Mar. 12, 2020).

verified, and by causing them to purchase the products at issue and pay more for those products than they were worth in the absence of statutory compliance.

368. Defendants' actions with respect to its products as described above are in violation of 21 U.S.C. §§ 301, *et seq*., and thus constitute unlawful business acts or practices under the UCL.

<div align="center">

**Unlawful Violations of the**

**Federal Trade Commission Act**

**15 U.S.C. §§ 41, *et seq.***

</div>

369. Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

370. Pursuant to 15 U.S.C. § 45(a)(1), "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

371. Pursuant to 15 U.S.C. § 52(a), "[i]t shall be unlawful for any person, partnership, or corporation to disseminate, or cause to be disseminated, any false advertisement—(1) By United States mails, or in or having an effect upon commerce, by any means, for the purpose of inducing, or which is likely to induce, directly or indirectly the purchase of food, drugs, devices, services, or cosmetics; or (2) By any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics."

372. Defendant's products are both drugs and cosmetics.

373. As described throughout this Complaint and in the Fifth, Sixth, and Seventh Causes of Action, Defendants engaged in unfair methods of competition in or affecting commerce, as well as unfair or deceptive acts or practices in or affecting commerce. The act of selling their products online satisfies the requirement of "in or affecting commerce."

374. As described throughout this Complaint and in the Fifth, Sixth, Seventh, and Eighth Causes of Action, Defendants disseminated false advertisements online and sold their products online, which satisfies the requirement of "in or affecting commerce." Those

advertisements were intended to induce and did in fact induce the purchase of Defendants' products.

375.   Defendants' actions with respect to its products as described herein are in violation of the Federal Trade Commission Act, 15 U.S.C. §§ 41, *et seq*., and thus constitute unlawful business acts or practices under the UCL.

### Injury from Defendants' Unlawful Actions

376.   To the extent that the unlawful conduct described above is based on misrepresentations, deception, or omission, Defendants knew, or by the exercise of reasonable care should have known, that their representations and omissions were untrue and misleading, and they deliberately made the aforementioned representations and omissions in order to deceive reasonable consumers like Plaintiff.

377.   As a direct and proximate result of Defendants' unlawful conduct and unfair competition, Plaintiff has suffered injury in fact and has lost money or property, time, and attention. Plaintiff reasonably relied upon Defendants' representations regarding their products. In reasonable reliance on Defendants' false representations, and as a result of Defendants' unlawful conduct and unfair competition, Plaintiff purchased the products at issue and paid more for those products than they would have had they been aware that Defendants' representations were false or had the Defendants not engaged in the unlawful and unfair conduct described herein. Plaintiff ended up with Products that were overpriced, inaccurately marketed, and that did not have the characteristics, qualities, or value promised by Defendants, and therefore Plaintiff has suffered injury in fact.

378.   As a purchaser and a consumer of Defendants' Products, and as a member of the general public who purchased and used the Products and has suffered injury in fact and lost money and property as a result of this unfair competition and unlawful conduct, Plaintiff is entitled to seek all available remedies under the UCL.

379.   The unfair and unlawful competitive practices described herein presents a continuing threat to Plaintiff in that Defendants persist and continue to engage in these practices, and they will not cease doing so unless and until forced to do so by this Court.

Defendants' conduct will continue to cause irreparable injury to consumers unless enjoined or restrained. Under California Business & Professions Code § 17203, Plaintiff is entitled to injunctive relief ordering Defendants to cease their unfair competitive practices, and Plaintiff is entitled to restitution. Plaintiff is further entitled to declaratory relief that any terms of use and condition of sale on the Cel MD Defendants' website are void and unenforceable because of the illegality of the Defendants' conduct and because of the illegality of the consideration provided by the Cel MD Defendants.

## EIGHTH CAUSE OF ACTION

### Common Law Fraudulent Concealment

380.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

381.   The elements for fraudulent concealment are: (1) the defendant must have concealed or suppressed a material fact; (2) the defendant must have had a duty to disclose the fact to the plaintiff; (3) the defendant must have intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff was unaware of the fact and would not have acted as they did if they had known of the concealed or suppressed fact; and (5) the plaintiff was damaged as a result of the concealment  or suppression of the fact.

382.   A duty to disclose arises when a defendant possesses or exerts control over material facts not readily available to the plaintiff. Absent a fiduciary duty, defendants still owe a duty when they have exclusive knowledge of material facts not unknown to the plaintiff, when they actively conceal a material fact from the plaintiff, or when they make partial representations but also suppresses some material facts.

383.   Defendants have concealed and suppressed material facts.

384.   Defendants had a duty to disclose because they had exclusive knowledge of material facts, they actively concealed material facts, and they made partial representations as described in the FACTUAL ALLEGATIONS within the Complaint, and in Plaintiff's Sixth and Seventh Causes of Action.

385.   As shown above Defendants' acts were made with intent to defraud.

386.   Plaintiff did not know of the material facts that Defendants concealed and would not have purchased Defendants' Products if those facts had been known.

387.   Plaintiff sustained damages as described in Plaintiff's Sixth Cause of Action.

## NINTH CAUSE OF ACTION

### Negligent Misrepresentation

388.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

389.   A plaintiff has a claim for negligent misrepresentation when a defendant: (1) misrepresents a past or existing material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation by another, and (5) which results in damage to another.

390.   Defendants misrepresent material facts as described throughout this Complaint and in Plaintiff's Seventh and Eighth Causes of Action.

391.   Defendants lack a reasonable ground for believing their claims to be true as they knew they were not doctors despite posing as doctors and using the MD moniker; they knew they were fabricating reviews and using stock photos to create the impression that they were touting reviews from real customers; they knew they were using their own employees to pose as customers; they knew they had no scientific basis for their plant stem cell claims, particularly given that they have made contradictory claims about how such stem cells could affect hair and skin growth; they knew their check out timers had no effect on a consumer's available discounts; they knew their representations regarding limited supply were false; and they knew they had not received FDA approval for their products.

392.   Defendants made these misrepresentations with the intent to induce reliance by Plaintiff as described in Plaintiff's Fifth, Sixth, and Seventh Causes of Action.

393.   Plaintiff justifiably relied on these representations and sustained damages as a result as described in Plaintiff's Sixth Cause of Action.

## TENTH CAUSE OF ACTION

### Negligent Manufacturing, Design, and Failure to Warn

394.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

395.   Defendants had a duty to exercise reasonable care in the research, development, testing for safety, formulation, manufacture, hiring of and use of qualified scientific or medical personnel, labeling, packaging, promotion, advertising, marketing, distribution, sale, and otherwise releasing their products into the stream of commerce.

396.   Defendants breached their duty of reasonable care to Plaintiff in that they negligently designed, developed, manufactured, tested, inspected, packaged, promoted, marketed, distributed, labeled, sold, and otherwise released Cel MD products into the stream of commerce. Specifically, Defendants failed to exercise reasonable care in ways that include, but are not limited to, the following particulars:

   a.   In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, of the dangerous and defective characteristics of Cel MD Products;

   b.   In their failure to warn or instruct and/or adequately warn or adequately instruct the public and consumers, including Plaintiff, of the propensity of Cel MD Products to cause side effects, serious injury, and damage to property;

   c.   In representing that Cel MD Products were safe and effective for their intended use when, in fact, the products were unsafe for their intended uses;

   d.   In failing to perform appropriate, reliable, and valid pre-market testing for safety of Cel MD Products;

   e.   In failing to perform appropriate, reliable and valid pre-market testing for contamination of Cel MD Products;

   f.   In failing to perform appropriate post-market testing of Cel MD Products;

   g.   In failing to adequately represent the lack of research with respect to Cel MD Products;

h.    In failing to disclose to consumers and Plaintiff adverse events known by Defendants;

i.    In failing to monitor or require sterile and good manufacturing processes of Cel MD Products;

j.    In failing to adequately represent the lack of research conducted on Cel MD Products; and

k.    In failing to perform appropriate post-market surveillance of Cel MD Products.

397.   Defendants knew or should have known that customers, including Plaintiff, would foreseeably suffer injury as a result of their failure to exercise reasonable and ordinary care.

398.   Defendants knew or should have known that Cel MD Products are unreasonably dangerous because they contain toxic ingredients, contaminants, or are made from unsafe formulas that could cause injury and for which the full extent of the harm is not yet known. They have admitted on comments in response to Amazon reviews that their products contained an "allergen," and knew that the products were causing various side effects in users because of an unidentified substance or contaminant contained in them.

399.   As a direct and proximate result of Defendants' carelessness and negligence, and of the unreasonably dangerous and defective characteristics of Cel MD Products, Plaintiff suffered injuries. Specifically Plaintiff experienced unusual scalp and skin dryness from the Cel MD hair products which went away when she stopped using it.

400.   Plaintiff received no benefits from her use of any of the Cel MD Products that she purchased.

401.   Plaintiff seeks as compensatory damages all reasonable medical and other expenses to be incurred for medical monitoring, which was made reasonably necessary as a result of exposure to toxic substances in the use of Defendants' products.

402.   Plaintiff seeks damages for emotional distress.

403.   Plaintiff seeks exemplary or punitive damages for Defendants' acts of oppression, fraud, and malice.

## **ELEVENTH CAUSE OF ACTION**

### **Strict Products Liability for**

### **Manufacturing Defect, Design Defect, and Warning Defect**

404.   Plaintiff incorporates all preceding and subsequent paragraphs by reference as if set forth fully herein.

405.   The elements of a strict products liability claim are: (1) plaintiff used the defendant's product in an intended or reasonably foreseeable manner; (2) the product was in a defective condition when it left the defendant's control; and (3) the defective product proximately caused the plaintiffs injuries or damages.

406.   Plaintiff used Cel MD Products in their intended manner as she followed the directions for use provided by Cel MD.

407.   Defendants' Cel MD Products were defective in manufacture, design, and directions or warning for use at the time the product left their control, for reasons including but not limited to:

a.   Cel MD Products had manufacturing defects due to units that deviated from the manufacturer's intended result or that differed from other units of the same product;

b.   Cel MD Products were defectively designed because they caused injury while being used in a reasonably foreseeable way;

c.   Cel MD Products failed to perform safely as an ordinary consumer would expect when used in an intended for reasonably foreseeable manner;

d.   Cel MD Products' design proximately caused Plaintiff's injury and Defendants cannot prove the balance of the benefits of design outweighed the inherent risks;

e.   Cel MD Products had dangers that Defendants knew or should have known and that required warning to ensure safe use;

f.   Cel MD Products had dangers that Plaintiff as an ordinary consumer would not have recognized;

g.   Cel MD Products have known or reasonably knowable risks in light of generally recognized scientific or medical knowledge and Defendants did not adequately warn of the risks.

408.   Cel MD Products proximately caused Plaintiff's injuries because the products' defects and defective warnings were a substantial factor in producing Plaintiff's injuries.

409.   All persons or legal entities in the stream of commerce or chain of distribution of a product are strictly liable, including those engaged in producing and marketing a defective product. A defendant with a participatory connection, whether for personal profit or other benefit, to a defective product or an enterprise that created consumer demand for and reliance upon the product are strictly liable.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff demands judgment as follows:

410.   Declaratory judgment that Defendants' actions are unfair and unlawful, and that any terms of service agreement on the Defendants' website is invalid and unenforceable;

411.   An award of injunctive relief as permitted by law or equity including an order prohibiting Defendants from engaging in the unlawful and tortious acts described above, as well as prohibiting Defendants from selling Cel MD products, charging any further subscription payments to consumers, and ordering Defendants to remove any ingredients from products they sell that may cause an allergic reaction;

412.   A finding that such injunction constitutes public injunctive relief, will result in the enforcement of an important right affecting the public interest, and otherwise meets the requirements of California Code of Civil Procedure § 1021.5, and an award of attorney's fees and costs pursuant to § 1021.5;

413.   For judgment for Plaintiff on her claims including actual damages in the amount of $234.69; $704.07 in treble damages; $40,000 in medical monitoring costs; for emotional distress in an amount to be proven at trial; and punitive damages not less than

$300,00.

414.   For restitution and/or other equitable relief, including without limitation disgorgement of all revenues, profits, and unjust enrichment that Defendants obtained from Plaintiff as a result of the unlawful, unfair, and deceptive business practices described herein;

415.   An award of attorneys' fees and costs;

416.   For pre-judgment and post-judgment interest as provided for by law or allowed in equity; and

417.   Such other and further relief as is necessary and appropriate.

## **DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. Proc. 38(b), Plaintiff demand a trial by jury on all issues so triable.

DATED: March 2, 2021                  Respectfully submitted,


                                      **KNEUPPER & COVEY, PC**


                                       /s/Kevin M. Kneupper
                                      _____
                                      Kevin M. Kneupper, Esq. (CA SBN 325413)
                                      **KNEUPPER & COVEY, PC**
                                      17011 Beach Blvd., Ste. 900
                                      Huntington Beach, CA 92647
                                      kevin@kneuppercovey.com
                                      Tel: (512) 420-8407


                                      *Attorney for Plaintiff Socorro Lopo*